ELK POINT IND. SCHOOL DIST. NO. 3, et al., Respondents
v. STATE COM'N ON E. & S. ED., Appellant

(187 N.W.2d 666)

(File No. 10854. Opinion filed June 9, 1971)

**Dana, Golden, Moore & Rasmussen,** Sioux Falls, for petitioners-respondents.

**Gordon Mydland,** Atty. Gen., **Horace R. Jackson,** Sp. Asst. Atty. Gen., Pierre, for defendant-appellant.

RENTTO, Presiding Judge.

The State Commission on Elementary and Secondary Education on November 25, 1969, created an independent school district in the south half of Union County to be effective July 1, 1970. In it were included all of the land areas of nine common school districts and a portion of another, and

all of the land areas within the Elk Point and Jefferson Independent districts. The Elk Point district and two of its elector-taxpayers petitioned the circuit court to have such action annulled. It was their claim that the commission had no authority to do away with their district. The court entered a judgment in their favor from which the commission appeals.

The Elk Point district constitutes the major area of the north part of the proposed district. It extends across the county from the Nebraska boundary to the Iowa line isolating the Jefferson Independent district and seven common school districts to the south. Apparently the new district at its southern extremity is contiguous to Sioux City, Iowa, except for the Big Sioux River which runs between them. The North Sioux City District No. 4 is the southernmost of these common school districts. It is a bedroom community for Sioux City to which it is connected by a modern highway bridge over the Big Sioux River. Its assessed valuation is not commensurate with the number of school age children resident in the district.

Ch. 38, Laws of 1967, created the commission and prescribed its functions. Before the effective date of the chapter, July 1, 1967, it was referred to a vote of the electors of the state as authorized by Art. III, § 1 of our Constitution. At the general election in November 1968 the act was approved. This made it effective in December 1968. SDCL 2-1-4, 12-13-20 and 12-20-47. In Section 3(1) it states:

> "All territory or land area within the State of South Dakota shall on or before July 1, 1970, become a part of an independent school district offering an accredited school program and meeting the standards adopted by the State Board of Education".

This declaration indicates the basic purpose of the legislature in creating the commission.

How that purpose was to be accomplished is detailed in Section 3(1) as follows:

"If any land area within the state has not become a part of an approved independent school district in accordance with the provisions of this Act on or before January 1, 1969, or to be effective on July 1, 1970, or if any boundary changes or adjustments of land area are necessary, the State Commission on Elementary and Secondary Education shall provide for a hearing for the residents of any land area so involved and shall by resolution take one of the following courses of action:

(a) create an approved independent school district, or

(b) combine, attach, and make any boundary change or adjustment of land area as may be deemed necessary, or

(c) request additional information and study prior to taking any course of action under (a) or (b) above.

"When the State Commission on Elementary and Secondary Education creates a school district under subsection (a) above, said Commission shall direct the Superintendent of Public Instruction to notify within ten days by mail the county boards of education and the school district boards affected and to notify and direct the county superintendent of schools to initiate school board election procedures, as provided in SDC 1960 Supp. 15.2021 as amended, within twenty days of the date of such notification.

"When the State Commission on Elementary and Secondary Education takes action under subsection (b) above, said Commission shall direct the Superintendent of Public Instruction to notify within ten days by mail the county boards of education, the school districts boards affected, and the county officials affected to take the necessary steps to implement the action taken by the State Commission on Elementary and Secondary Education."

It is obvious that the action of the commission here in question was taken under subdivision (a).

In support of its action the commission reminds us that the creation, enlargement, consolidation or dissolution of school districts is a legislative function in which due process is not involved, and that the courts may not substitute their judgment for that of the legislative delegate. This we have held. Stephens v. Jones, 24 S.D. 97, 123 N.W. 705; Dunker v. Brown County Board of Education, 80 S.D. 193, 121 N.W.2d 10; Thies v. Renner, 78 S.D. 617, 106 N.W.2d 253. It also points to the general legislative declaration that it is essential that every child have access to an adequate education, adequately supported and substantially equal throughout the state. SDCL 13-6-2.

■ ■ In summarizing its position the commission in its brief states:

> "If we look beyond the limits of the legal questions here involved to the fact situation involved, it is obvious the action of the Commission was in the best interests of all the children residing in the area. Any restriction of reorganization to the area south of Elk Point Independent District would create a relatively impoverished district inevitably resulting in a deprivation of the children there resident and a wanton disregard of the long announced legislative policy of equal opportunity among the children of South Dakota to have access to adequate secondary as well as elementary education."

Obviously that must concern the commission. However, while we recognize the plenary power of the legislature in this field, it is settled that the agency carrying out the legislative function must do so within the limitations prescribed in the delegating statute. Warner Independent School District No. 230 of Brown County v. County Board of Education of Brown County, 85 S.D. 161, 179 N.W.2d 6; Brandon Valley Independent School District No. 150 v. Minnehaha County Board of Education, 85 S.D. 255, 181 N.W.2d 96. The Elk Point district contends that the commission here exceeded

its granted authority. Whether it has done so is a matter for judicial determination. That is the concern of the courts.

■ In applying legislative enactments we must accept them as written. The legislative intent is determined from what the legislature said rather than from what we or others think it should have said. National College of Business v. Pennington County, 82 S.D. 391, 146 N.W.2d 731. In this connection it is to be observed that under Section 3(1) (a) of the act the commission could take action only as to land areas which were not a part of (1) an independent school district (2) offering an accredited school program (3) meeting the standards adopted by the State Board of Education.

Out of such areas it was empowered to "create an approved independent school district." While there were such areas in the region involved the Elk Point district contends that the territory of its district was not of that kind. It is stipulated that it is an independent district and was then offering an accredited school program. Obviously, it has characteristics (1) and (2). The parties differ as to whether it possessed characteristic (3).

Ch. 38, Laws of 1967, in Section 2(6) gave to the State Board of Education power to "Establish regulations and standards for approving proposed school districts". Pursuant to this grant the board on January 20, 1969, adopted a set of such standards filed with the Secretary of State February 10, 1969. These became effective 20 days thereafter. SDCL 1-26-8. They are in the record as Exhibit D. In the record as Exhibit L are the standards in force and effect before those in Exhibit D were adopted. It is agreed that the Elk Point district had met all the standards in Exhibit L, but apparently it was not then meeting those in Exhibit D. However, it is undisputed that the Elk Point district was prepared to satisfy them by July 1, 1970.

The commission urges that because of this shortcoming the Elk Point district was subject to its action. We do not share that view. It seems to us that this characteristic, compliance with the standards adopted by the State Board of Education—(3) above, refers to the standards under which

606

the Elk Point Independent District was operating. These are the ones in Exhibit L and were applicable to the independent districts then in existence. Those in Exhibit D were intended to affect only the new independent districts which the commission proposed to bring into being under the powers conferred on it by Ch. 38. See Section 2(6) thereof.

■ As we read the act the trial court was correct in holding that the commission had no authority to put any territory of the Elk Point district into the newly created independent district. It was then an independent district offering an accredited school program and meeting the standards adopted by the state board.

S.B. 140 of the 1970 Session of the Legislature proposed to amend Section 3(1) (a) of Ch. 38, Laws of 1967, the provision under which the commission had proceeded in this matter, by adding thereto the following language:

"by combining one or more common school districts or portions thereof with an independent school district to create a new school district entity, or by combining two or more common school districts or a portion thereof with two or more independent school districts or portions thereof to create a new school district entity, or to combine two or more independent school districts or portions thereof to create a new school district entity."

The apparent purpose of this was to give to the commission authority to do thereafter what it had attempted to do in creating the new district. This portion of S.B. 140 the legislature did not approve. Its remaining features were adopted and appear as Ch. 94, Laws of 1970. One of these amended the substance of Section 3(1) (b) of Ch. 38, Laws of 1967, to read:

"Combine, attach and make any boundary change or adjustment of land area as may be deemed necessary of a common or of an independent school district with another independent school district."

Also, that session defeated S.B. 141 which was an act to validate all proceedings had for the reorganization of school districts by the state commission before January 1, 1970.

The commission urges that the trial court was without jurisdiction of this proceeding because there is no right of appeal from the commission's action. Whether such would lie under the general appeal provisions of the school law, SDCL 13-46, we need not determine because the petitioners herein did not seek this review by virtue thereof. They claim a right to judicial review under our Administrative Procedures Act.

■■ Ch. 38, Laws of 1967, creating the State Commission on Elementary and Secondary Education, authorized it to adopt rules and regulations for implementing the provisions of the act. Consequently, we think it is an agency within the meaning thereof. SDCL 1-26-1. Clearly, the electors and taxpayers seeking this review are authorized to do so by SDCL 1-26-30. In view of this the right of the Elk Point district to do so, which is challenged by the commission, becomes moot.

We think this position gains support from the enactment of Ch. 94, Laws of 1970. In Section 1(5) thereof the commission is given the right to appeal to the Supreme Court from an adverse decision by a circuit court from an appeal to such court taken under the Administrative Procedures Act, by a county board of education, school board or a resident elector. Accordingly, we hold that the trial court had jurisdiction of this proceeding.

Affirmed.

HANSON, BIEGELMEIER AND WINANS, JJ., concur.

WOLLMAN, J., concurs in part and dissents in part.

WOLLMAN, Judge (concurring in part and dissenting in part).

I concur in that part of the majority opinion that holds that there is a right of appeal from the commission's actions. I do not agree, however, that Ch. 38, Laws of 1967, did not

give the commission the authority to do what it did in the instant case. This interpretation is too restrictive and in effect frustrates the effectuation of the purpose of the statute.