F & M AGENCY, Bank of Cresbard Agency, Citizens Agency, Security Insurance Agency of Webster, Lemmon Insurance Agency, Roslyn Insurance Agency, and Citizens Insurance Agency, Plaintiffs,

v.

Del DORNBUSH, d/b/a Dornbush Agency, and Donald Prachar, Defendants and Appellants.

and

Dean DORNBERGER, d/b/a Dornberger and Associates, Defendant, Third-Party Plaintiff and Appellant,

v.

AMERICAN BENEFITS LIMITED TRUST, a California Trust, and Insurers Administrative Corporation, an Arizona Corporation, Third-Party Defendants,

and

AIG Life Insurance Co., a Delaware Corporation, Third-Party Defendant and Appellee.

No. 15287.

Supreme Court of South Dakota.

Considered on Briefs Oct. 24, 1986.

Decided March 11, 1987.

---

James M. Cremer of Bantz, Gosch, Cremer, Peterson & Oliver, Aberdeen, for appellants Dornbush, Prachar, and Dornberger.

Lyle J. Wirt and Rick W. Orr of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellee AIG Life Ins. Co.

HENDERSON, Justice.

## PROCEDURAL BACKGROUND

Plaintiffs-appellants, several insurance companies (Plaintiffs), contend that the circuit court erred when it granted defendant-appellee American Insurance Group's (AIG) Motion for Summary Judgment. Plaintiffs claim that AIG violated SDCL 58–33–6 by failing to notify them of a third party's misrepresentation concerning AIG's involvement in an insurance program. In granting AIG's Motion for Summary Judgment, the circuit court ruled that AIG (1) did not violate the statute; and (2) took all reasonable action to notify potential insurance purchasers of any untrue representations.

We affirm.

## FACTS

Plaintiffs sell their product through various banks to bank's depositors. In 1981, Plaintiffs were selling health insurance to depositors. Later in 1981, Plaintiffs decided to change health insurance carriers and sought another carrier that would pay them higher commissions. They contacted Del Dornbush, their long-standing insurance advisor. A short time later, Dornbush was contacted by another broker, Donald Prachar. Prachar told Dornbush of a group health insurance plan for depositors that was administered by Insurers Administrative Corporation (IAC). This plan was reportedly underwritten by AIG and was fully insured. Prachar mentioned the name of Dean Dornberger, a reputed insurance broker who knew more about the IAC program.

In early August 1981, Dornberger met with the president (Tom Bennedek) and the vice president (Steve Wood) of IAC in Arizona. Dornberger was given pamphlets and brochures prepared by IAC. These materials stated that the IAC program was underwritten by member companies of AIG and AIG Life Insurance. In fact, Lexington Insurance Company, a Delaware corporation and member of AIG, had entered into a stop-loss contract on or about May 1, 1981, with American Benefits Limited Trust (ABLT). Lexington had agreed to pay to ABLT the excess obligation on any one of ABLT's certificate holders when it exceeded $25,000. However, Lexington assumed no obligation to any individual certificate holder and did not fully insure or

underwrite the ABLT–IAC program via this policy.

In September 1981, Dornbush, Dornberger, and Prachar met with Plaintiffs. The subject of conversation was the possible conversion to the IAC program. Plaintiffs were told that the program was fully insured. However, in actuality, the IAC program was not fully insured.

In mid-January 1982, a vice president for AIG Life Insurance received information that IAC was promoting a health insurance program which was fully insured and underwritten by AIG. She knew AIG was not involved in such a program. Later, she received an IAC brochure confirming her suspicions. An AIG manager was instructed to contact IAC and request that AIG's name be removed from the brochures. Subsequently, it was learned that IAC had not complied with the request.

On February 17, 1982, Associate General Counsel for AIG telephoned IAC vice president Wood and demanded that IAC stop using AIG's name in IAC pamphlets. On February 25, 1982, Assistant General Counsel to AIG Life Insurance met with Bennedek and Wood of IAC. At this meeting, the IAC people were informed that representations contained in IAC's pamphlets were false. AIG also requested that IAC provide a list of agents to whom IAC previously made misrepresentations. Wood partially complied with this request. IAC did not compile a list of all brokers and insurance agents in the IAC sales network. IAC did provide AIG with a partial client list. Said list is handwritten and its entries are identified by (1) first name only; (2) business name; or (3) first and last name. No addresses are present save for initials representing states appearing after some entries. Del Dornbush's name appears on this list. The initials "S.D." follow his name.

AIG did not attempt to contact the people whose names appeared on the client list. On March 2, 1982, AIG, through its counsel, sent letters to the insurance departments of each of the fifty states informing them of the brochure's falsity and advising them that AIG had not known of, nor authorized, the statements. AIG also brought action in the Superior Court of California on March 23, 1982, to enjoin ABLT and IAC from misusing its name in the brochures. Ultimately, AIG received a permanent injunction preventing ABLT and IAC from distributing any information or pamphlets which mention the AIG Companies. The California Court also ordered ABLT and IAC to mail notices to all parties, who had received false information, correcting the misrepresentation.

On or about May 7, 1982, IAC notified Dornbush, Dornberger, and Prachar by letter that IAC did not insure the health program in question. IAC recommended that Dornbush, Dornberger, and Prachar convert their insurance program from ABLT group to one that would be fully insured by Massachusetts Indemnity and Life Insurance Company under the Multiple Unit Security Trust. Dornbush, Dornberger, and Prachar elected not to implement this change.

On July 2, 1982, each Plaintiff agency received a letter dated June 25, 1982, in which IAC advised them that the insurance program was being terminated on August 1, 1982. The program was never placed with AIG nor underwritten by it or any of its companies. Instead, the program was placed with ABLT and was not fully insured by any insurance company. Shortly thereafter, ABLT filed a Chapter 7 Bankruptcy Petition, leaving some $60,000 of depositors' claims unpaid.

Plaintiffs paid all depositors' claims. They then brought this action against Dornbush, Dornberger, and Prachar based upon misrepresentations made to Plaintiffs regarding the fully insured status of the program. Dornbush, Dornberger, and Prachar made third-party defendants of ABLT, IAC, and AIG. ABLT never responded due to its bankruptcy status.

On December 31, 1984, the circuit court entered summary judgment in favor of Plaintiffs and against Dornbush, Dornberger, and Prachar for unpaid claims, prejudgment interest, attorney's fees, and the

cost of developing a replacement program. Plaintiffs later settled with the three by accepting a payment and an assignment of Dornbush's, Dornberger's, and Prachar's claims against ABLT, IAC, and AIG.

On January 2, 1986, the circuit court ruled on Plaintiffs' Motions for Summary Judgment against IAC and AIG. However, AIG also moved for summary judgment against Plaintiffs. The court ruled against Plaintiffs on their motions against IAC and AIG and simultaneously granted AIG's cross-motion for summary judgment against Plaintiffs. With respect to IAC, the court found that there was a genuine issue of material fact regarding the amount of damages that Plaintiffs could recover from IAC. Therefore, IAC is not a party to this appeal. Concerning AIG, it was determined that AIG had not been involved in disseminating false brochures and information. The court further ruled that upon discovery of IAC's misrepresentation, AIG took reasonable action to protect insurance purchasers who could be adversely affected by incorrect statements in IAC's promotional materials. Therefore, Plaintiffs' summary judgment motion was denied and AIG's like motion was granted.

Plaintiffs appeal.

## DECISION

### DID THE CIRCUIT COURT ERRONEOUSLY GRANT AIG'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFFS (DID AIG VIOLATE SDCL 58–33–6)?

We hold it did not. Plaintiffs seek to hold AIG liable under the assignment of Dornbush's, Dornberger's, and Prachar's claims against AIG for AIG's failure to promptly notify Dornbush, Dornberger, and Prachar of IAC's misrepresentation

that AIG fully insured and underwrote the new program. Plaintiffs contend that AIG's duty to notify Dornbush, Dornberger, and Prachar of any IAC misrepresentations contributed to Plaintiffs' losses. It is asserted by Plaintiffs that a duty to notify arises from SDCL 58–33–6,[*] which is concomitant to that statute's proscription of direct or indirect creation, circulation, etc., of untrue representations. Plaintiffs urge that we reverse the Summary Judgment entered in favor of AIG and remand with directions to enter Summary Judgment in favor of Plaintiffs against AIG.

Summary judgment is properly granted when there are no genuine issues of material fact. *Wilson v. Great Northern Ry.*, 83 S.D. 207, 211, 157 N.W.2d 19, 21 (1968). *See* SDCL 15–6–56(c). In this case, both parties moved for summary judgment and the facts, *supra*, are undisputed. The singular issue before the circuit court, and now this Court, is whether AIG violated SDCL 58–33–6. We agree with the circuit court that no violation occurred and that AIG's motion for summary judgment was properly granted.

According to Plaintiffs, AIG is liable based upon a nonfeasance or omission to act, namely that AIG failed to notify Plaintiffs of IAC's inaccurate brochures. Indeed, whether AIG owed a duty of notification to Plaintiffs is at the crux of this case. Duty is defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Prosser & Keeton on the Law of Torts*, § 53, at 356 (5th ed. W. Keeton 1984). A noncontractual duty may be imposed by common law, statute, implication or operation of law, public policy, or from a failure to exercise that care which a reasonable person would exercise under

---

[*] SDCL 58–33–6 provides:

No person shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated or placed before the public, in a newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster, or over any radio or television station, or in any other way, an advertisement, announcement or statement containing any assertion, representation or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business, which is untrue, deceptive or misleading. Violation of this section is a Class 2 misdemeanor.

like circumstances. *See* 65 C.J.S. *Negligence* § 4(7) (1966); 2 Restatement (Second) of Torts § 285 (1965). *See also Albers v. Ottenbacher*, 79 S.D. 637, 641, 116 N.W.2d 529, 531 (1962).

Plaintiffs repeatedly advocate that AIG's duty to notify stems from SDCL 58–33–6. Yet, absent any relationships or connection between AIG and Plaintiffs (or AIG and IAC, ABLT, or Dornbush, Dornberger, and Prachar), we cannot agree that any such duty exists. We are unable to find authority in which liability was imposed in a situation such as this. Plaintiffs fail to assist us in our research. Moreover, we will not take it upon ourselves to read more into a statute than is written there by the legislature. *See In re Famous Brands, Inc.*, 347 N.W.2d 882, 884–85 (S.D.1984); *Elk Point Independent Sch. Dist. v. State*, 85 S.D. 600, 605, 187 N.W.2d 666, 669 (1971); *Boehrs v. Dewey County*, 74 S.D. 75, 79, 48 N.W.2d 831, 834 (1951); *Ex Parte Brown*, 21 S.D. 515, 519, 114 N.W. 303, 305 (1907). Hence, we refuse to interpret SDCL 58–33–6 in a manner which would impose liability upon AIG.

Neither does the common law impose a duty to notify in circumstances such as these. Liability for a nonfeasance hinges upon the identification of "some definite relation between the parties, of such a character that social policy justifies the imposition of a duty to act." Prosser, *supra*, § 56, at 374. *See generally Moore v. Kluthe & Lane Ins. Agency*, 89 S.D. 419, 428, 234 N.W.2d 260, 264 (1975); *Boos v. Claude*, 69 S.D. 254, 260, 9 N.W.2d 262, 264 (1943) (where this Court noted that a duty will exist only if prefaced by a significant relationship between the parties). For the most part, such a duty to act has been imposed where the relation is of "some existing or potential economic advantage to the defendant," and the expected benefit justifies the requirement of special obligations. Prosser, *supra*, § 56, at 374.

The purpose of SDCL ch. 58–33 is "to regulate trade practices in the business of insurance … by defining, or providing for determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." SDCL 58–33–1. AIG has not embarked upon a course of conduct which is prohibited either expressly or impliedly by this chapter. Absent any significant relationships between AIG and any of the other parties, we cannot say that AIG owed a duty of notification to Plaintiffs. Furthermore, we agree with the circuit court in its determination that upon learning of false representations being made to use their name to sell insurance, AIG took immediate action to protect possible purchasers of falsely represented insurance.

The judgment of the circuit court is affirmed.

WUEST, C.J., MORGAN and SABERS, JJ., and FOSHEIM, Retired Justice, concur.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.