Robert REUTTER, Petitioner
and Appellant,

v.

Mark V. MEIERHENRY, Attorney General of the State of South Dakota, and Herman Solem, Warden of the South Dakota State Penitentiary, Appellees.

No. 15435.

Supreme Court of South Dakota.

Argued Jan. 12, 1987.

Decided May 6, 1987.

Steve Miller of Cummings Legal Clinic, P.C., Sioux Falls, for petitioner and appellant.

Jon R. Erickson, Asst. Atty. Gen., Pierre, for appellees; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

DOBBERPUHL, Circuit Judge.

## PRELIMINARY STATEMENT

Petitioner Robert Reutter appeals from an order granting summary judgment against him in this habeas corpus proceeding. Petitioner contends summary judgment is not applicable in habeas corpus cases, and that he should be given a full evidentiary hearing on the merits of the case. We affirm.

## FACTS

Petitioner Reutter (Reutter) was convicted of two counts of aiding and abetting the distribution of cocaine and one count of conspiracy to distribute cocaine. His conviction was affirmed on direct appeal. *State v. Reutter*, 374 N.W.2d 617 (S.D. 1985). Reutter brought this habeas corpus proceeding on the grounds that newly discovered evidence uncovered a secret "deal" between the state and David Trygstad (Trygstad), a principal witness in the case against Reutter. More specifically, the "deal" alleged by Reutter was Trygstad's favorable testimony to be rewarded by favorable treatment in sentencing.

To fully understand this case, we must focus on the interaction of the Trygstad case and the Reutter case. On January 9, 1983, David Trygstad was arrested on cocaine related charges. These charges stemmed from a scheme to distribute cocaine in Sioux Falls. Reutter was involved in this distribution scheme. *See Reutter, supra.*

Trygstad retained Sioux Falls attorney Russell Kading (Kading) to represent him in this matter. On January 12, 1983, Kading negotiated a plea agreement in Trygstad's case with Attorney General Mark Meierhenry (Meierhenry) and two of his Assistant Attorneys General, Dennis Holmes (Holmes) and Jon Erickson (Erickson). After Kading met and discussed these negotiations with Trygstad, a handwritten plea agreement was prepared. Meierhenry and Trygstad each signed the document and dated it January 12, 1983. The pertinent parts of this plea agreement read as follows:

1. Plead to conspiracy to dist[ribution] of cocaine on Jan[uary] 9 and Dec[ember] 24 in a single information. . . .

3. The Def[endant] will cooperate with the State including but not limited to testimony, information, reasonable travel to point locations or people with the aim to provide the State with information that may lead to the conviction of others regarding the charges currently pending.

4. The State will recommend a sentence of five years for all the criminal activity to which the Def[endant] pleads. The State will solicit the Court to limit the total time served to five years. However, it is recognized that the Court may ignore the State's recommendation. If the Judge ignores the State's recommendation and Defendant has complied with [the] remainder of this agreement, the State will not bring any additional or different charges.

5. This agreement covers all charges prior to January 12, 1983 except any charge of rape, murder, robbery, or treason.

6. The State will not be limited in any argument except as stated above as to the total number of years recommended. . . .

Later in January of 1983, Trygstad pled guilty to two counts of conspiracy to distribute a controlled substance. At Trygstad's sentencing in March of 1983, the state recommended that Trygstad's two five-year sentences be served *concurrently.* The circuit court sentenced Trygstad to two *consecutive* five-year prison terms, however. Trygstad was then incarcerated in the South Dakota State Penitentiary.

Trygstad had agreed to cooperate with the state in the drug cases against Reutter. With Trygstad's testimony, Reutter was indicted by a Minnehaha County Grand Jury on various drug charges in July of 1983. Thus, the state's case against Reutter had formally begun.

In December of 1983, Trygstad began an effort to get his sentence reduced by applying to the South Dakota Board of Pardons and Paroles (Board) for a commutation of his sentence. Trygstad's application for commutation of his sentence was set to be heard by the Board in late January of 1984. After several continuances, Trygstad's commutation hearing was finally set for March 22, 1984.

Reutter's case centers around a letter dated February 16, 1984, written by Trygstad to a business associate. In the letter, Trygstad wrote that he thought he would be out by summer. Reutter relies on this letter as a basis for his secret "deal" theory. This letter will be discussed further below.

During this time, Reutter's case had been working itself toward trial. Reutter's trial began in early March of 1984, with Trygstad testifying on March 13.

One of the things Trygstad testified about was the January 12, 1983 plea agreement. The agreement was discussed thoroughly both on direct and cross-examination. Trygstad stated the January 12 agreement was the only agreement he made with the state. No further promises were uncovered.

Trygstad also testified that he knew Assistant Attorney General Jon Erickson was

on the Board of Pardons and Paroles. Erickson was also co-counsel for the state at Reutter's trial. Trygstad testified that he did not ask Erickson about parole or any other Board business.

Russell Kading, Trygstad's attorney, also testified at Reutter's trial. Kading specifically testified about the January 12, 1983 plea agreement. Kading knew of no additional promises that were made to Trygstad other than those in the January 12 agreement.

Two important events happened on March 22, 1984. One was the jury verdict in Reutter's case. The other was Trygstad's commutation hearing before the Board. Erickson was not present at the Board hearing when Trygstad's case came up. Erickson had left to take the jury verdict in Reutter's case. Before Erickson left, however, he told the Board that the recommendation at Trygstad's sentencing was fair at the time it was made and was still a fair recommendation. In a subsequent affidavit, Erickson said he made this statement to the Board on his own behalf and not as part of some secret "deal." Erickson did not participate in the Board's decision on Trygstad's commutation request.

On the same day as Trygstad's commutation hearing, a jury returned a verdict against Reutter finding him guilty on two counts of aiding and abetting the distribution of cocaine and one count of conspiracy to distribute cocaine. Reutter was sentenced to the South Dakota State Penitentiary.

Meanwhile, the Board had made a decision on Trygstad's commutation request. The Board's report to Governor William Janklow recommended a commutation of Trygstad's sentence from two five-year terms served consecutively to two five-year terms served concurrently. The Board believed Trygstad was on the road to rehabilitation. Meierhenry also wrote to the Governor recommending that Trygstad's sentence should be commuted because Trygstad had learned his lesson and helped the state in other cases. In April of 1984, the Governor acted on the Board's and the Attorney General's recommendations and commuted Trygstad's sentence to two five-year terms to be served concurrently.

Trygstad became eligible for parole soon after his sentence was commuted. In June 1984, the Board granted Trygstad's request for parole. Erickson disqualified himself from playing any part at all in Trygstad's parole request.

Reutter appealed his conviction and in September of 1985, this court affirmed the conviction. *Reutter, supra.*

Reutter then turned to habeas corpus in his quest for relief. The main allegation of his petition was a denial of due process rights because of the existence of a secret "deal" with Trygstad.

Feeling that there was nothing of substance to the allegations in Reutter's original petition or amended petition, the respondents filed a motion to dismiss. This motion was supported by the affidavits of Meierhenry, Erickson and the Governor. The trial court also had access to the testimony of Trygstad and Kading taken at Reutter's trial. The affidavits and trial testimony all carried one theme, that the only deal the state ever made with Trygstad was that contained in the January 12, 1983 written agreement. This was the agreement which was fully disclosed to Reutter before his trial and to the jury during the course of the trial. Respondents' motion to dismiss Reutter's habeas corpus action was denied by the circuit court.

Respondents then filed a motion for summary judgment and a return to the writ of habeas corpus. *See* SDCL § 21-27-9.3. Later, respondents made a motion requesting the court to inspect the Board of Pardons and Parole's file on Trygstad. This motion was granted, and the trial court reviewed Trygstad's file.

At the hearing on the motion for summary judgment, Reutter stuck with the position that summary judgment was a procedure not applicable to habeas corpus actions. No additional insight to the secret "deal" allegation was made by Reutter. The circuit court granted respondents' mo-

tion for summary judgment and entered findings of fact and conclusions of law.

## ISSUE I

Did the trial court err in using summary judgment, SDCL § 15–6–56, to dispose of a habeas corpus action?

There is little in SDCL ch. 21–27, *Habeas Corpus*, that deals with procedures to be used in circuit court. The only section in the habeas corpus chapter that touches upon procedures is SDCL § 21–27–14, which reads as follows:

> The court or judge shall proceed in a summary way to settle the facts by hearing the evidence and arguments, as well of all persons interested civilly, if any there be, as of the applicant and the person who holds him in custody, and shall dispose of the applicant as the case may require.

The Rules of Criminal Procedure, SDCL Title 23A, do not apply to habeas corpus proceedings. SDCL § 23A–45–7(1). The Rules of Civil Procedure, SDCL ch. 15–6, do apply to habeas corpus cases as long as they are not inconsistent or in conflict with the procedure and practice provided in SDCL ch. 21–27, *Habeas Corpus*. *See* SDCL § 15–6–81(a) and SDCL ch. 15–6, Appendix A. *Special Proceedings.*

The question then becomes whether to "proceed in a summary way" is "inconsistent or in conflict" with SDCL § 15–6–56 (summary judgment). We hold there is no inconsistency or conflict.

■ Habeas corpus is a civil proceeding. Summary judgment is a method of disposing civil proceedings within the guidelines of *Wilson v. Great Northern Railway Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968).

> This is not to say that every set of allegations not on its face without merit entitles a habeas corpus petition to an evidentiary hearing. As in civil cases generally, there exists a procedure whose purpose is to test whether facially adequate allegations have sufficient basis in fact to warrant plenary presentation of evidence. That procedure is, of

course, the motion for summary judgment. . . .

*Blackledge v. Allison*, 431 U.S. 63, 80, 97 S.Ct. 1621, 1632, 52 L.Ed.2d 136, 151 (1977). Summary judgment can be used in habeas corpus cases.

## ISSUE II

Did the trial court err in granting summary judgment in favor of the Respondents?

When summary judgment is utilized, the many rules of *Wilson, supra*, apply. Upon an appeal of an order granting summary judgment, this court will affirm "if any basis exists which supports the ruling." *Trapp v. Madera Pacific, Inc.*, 390 N.W.2d 558, 562 (S.D.1986). "Moreover, this court is not bound by the factual findings of the trial court. Instead, we conduct an independent review of the record." *Hurney v. Locke*, 308 N.W.2d 764, 767 (S.D.1981).

■ Upon review of the record, we find that summary judgment was properly granted in this case. Reutter never came forward with even the weakest of evidence to support his secret "deal" theory. Instead, he chose to rest on his pleadings and the allegations contained therein.

Reutter points to Trygstad's February 16, 1984 letter as evidence of a secret "deal." This letter, which does not appear in the record, just stated that Trygstad thought he would be out by summer. Reutter reads into this favorable testimony for favorable treatment. Reutter's reasoning fails, however, because Trygstad could have been "out" before Reutter's trial, or Trygstad's commutation or parole could have been denied. Reutter forgets that all action had to begin at the Board of Pardons and Paroles, with decisions made by two independent members of that three-person body. Erickson did not vote on Trygstad's applications.

Reutter seeks a full evidentiary hearing. He wants to examine all the parties involved in an effort to build a case for himself. These people gave affidavits or testified at Reutter's trial that no secret "deal" existed. This court will not sanction

fishing expeditions. If Reutter would have produced even a shred of credible evidence, he would have been granted a full evidentiary hearing on this matter. Reutter did not have the shred of evidence needed.

▆ Reutter's main thrust is that the secret "deal" should have been revealed to him under the Brady Rule. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *State v. Wilde*, 306 N.W.2d 645, 647 (S.D.1981), we said that the "[s]uppression by the prosecution of evidence favorable to an accused violates due process where the evidence has been requested by the accused and is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecutor." The January 12, 1983 plea agreement was fully disclosed to Reutter. Since full disclosure was made, there was full compliance with the Brady Rule as set down in *Wilde, supra.*

The trial court's decision is affirmed.

MORGAN and MILLER, JJ., concur.

WUEST, C.J., concurs specially.

HENDERSON, J., dissents.

DOBBERPUHL, Circuit Judge, sitting for SABERS, J., disqualified.

WUEST, Chief Justice (concurring specially).

*Habeas corpus* is an extraordinary remedy guaranteed by the Constitution of South Dakota. Art. VI, § 8. SDCL 21–27–14 specifically provides the procedure for determining the merits of a case. Therefore, summary judgment should not be applied to *habeas corpus* proceedings. The trial courts should follow the specific procedure mandated by SDCL 21–27–14. However, I vote to affirm this case and treat it as a disposition under SDCL 21–27–14. The record establishes by affidavits and testimony there was not a "deal." Reutter was given an opportunity by the *habeas corpus* court to produce evidence of a "deal," but he declined, apparently, because he did not have any evidence. Instead, Reutter wanted to call the officials before the court and question them under oath when they had already denied any "deal" by affidavit. In my opinion, *habeas corpus* should not be utilized as a discovery process, a fishing expedition, or a means of chastising public officials.

HENDERSON, Justice (dissenting).

This country was created, then matured and prospered, upon a foundational concept of liberty. Habeas corpus is referred to as "the most important writ of all" and is "often called the great writ of liberty...." 4 C. Torcia, *Wharton's Criminal Procedure*, § 646, at 374 (12th ed. 1976). *See Cochrun v. Solem*, 397 N.W.2d 94, 96 (S.D. 1986). *See also* L. Yackle, *Postconviction Remedies*, § 4 (1981) (where a concise history of habeas corpus appears). Another commentator identified habeas corpus as the "most important human rights provision in the Constitution." Chafee, *The Most Important Human Right in the Constitution*, 32 B.U.L.Rev. 143,143 (1952).[1] I fear this Court, by permitting summary disposition of habeas corpus claims by judicial fiat, has opened a crack in the infrastructure of "the great writ" into which an alarming number of habeas corpus cases will be forced until, alas, the crack becomes a cavernous opening used to circumvent the righteous demands that the pursuit of liberty places upon our judicial system. Let us not, those who serve in the judiciary, cast out a grace, bestowed upon us, by our state constitution, S.D. Const. art. VI, § 8, which prohibits the suspension of habeas corpus, except in cases of rebellion or invasion.

Habeas corpus is guaranteed constitutionally (a gift of our forefathers) and the

---

1. Mr. Chafee eloquently wrote: "[S]uch great liberties as worship and speech will go on somehow, despite laws, but not liberty of the person. Censorship can be evaded; prosecutions against ideas may break down; a prison wall is *there*. Only habeas corpus can penetrate it. When imprisonment is possible without explanation or redress, every form of liberty is impaired." 32 B.U.L.Rev. at 143 (emphasis in original). Indeed, habeas corpus may well be "'the single advantage our government has over that of other countries.'" *Id.* (quoting Boswell's Life of Johnson, narrative for Sept. 1769).

procedure for determining the merits of a case is set forth statutorily. S.D. Const. art. VI, § 8; SDCL 21–27–14. Long ago, this Court recognized the writ as being one of constitutional right. *In re Hammill,* 9 S.D. 390, 69 N.W. 577 (1896). Statutory authority *does not* specifically exist for summary disposition of habeas corpus claims. *See* SDCL ch. 21–27. In fact, the legislature, in 1983 or thereafter, did not reenact, into the habeas corpus section, certain post-conviction statutes which previously authorized summary disposition of claims.[2]

In *Rosander v. Board of County Comm'rs,* 336 N.W.2d 160, 161 (S.D.1983), we set forth a basic rule of statutory construction: "When the legislature amends the terms of a statute, we generally presume that the legislature intended to alter the meaning of the statute to comport with the new terms." *State v. Heisinger,* 252 N.W.2d 899, 903 (S.D.1977); *In re Dwyer,* 49 S.D. 350, 354, 207 N.W. 210, 212 (1926). Under present South Dakota law, I am compelled to reason that summary judgment is not proper in habeas corpus cases. Perhaps the legislature's ability to expressly incorporate summary judgment procedures to habeas corpus claims does hypothetically exist. As I have reviewed above,

however, this limitation does not now exist. Steadfastly do I maintain that this Court should not read more into a statute than is written there by the legislature. *See F & M Agency v. Dornbush,* 402 N.W.2d 353, 357 (S.D.1987); *In re Famous Brands, Inc.,* 347 N.W.2d 882, 884–85 (S.D.1984); *Elk Point Independent Sch. Dist. v. State,* 85 S.D. 600, 605, 187 N.W.2d 666, 669 (1971). This principle should be applied to the set of facts at hand.

Lastly, the habeas corpus statute provides: "The court or judge *shall* proceed in a summary way to *settle the facts by hearing the evidence and arguments....*" SDCL 21–27–14 (emphasis added).[3] No evidence was taken. Thus, the plain words of this statute preclude summary disposition of habeas corpus claims. We, of the judiciary, ought await explicit legislative authorization before considering if habeas corpus, the "great writ of liberty" and the "most important human rights provision in the Constitution," may be treated in cursory, summary judgment fashion.

Therefore, I would reverse the circuit court's order granting summary judgment to the State, ring the Liberty Bell with the great old writ, and remand this proceeding with instructions that an evidentiary hear-

---

**2.** In 1966, South Dakota enacted its version of the Uniform Post-Conviction Procedure Act. 1966 S.D.Sess.Laws ch. 121. Two types of summary disposition were added to the Uniform Post-Conviction Procedure Act in 1971. 1971 S.D.Sess.Laws ch. 161, §§ 6, 7. SDCL 23–52–10.1 (1971) provided:

> When a court is satisfied, on the basis of the petition, the answer or motion, and the record, that the petitioner is not entitled to post-conviction relief and no purpose would be served by any further proceedings, it may indicate to the parties its intention to dismiss the petition and its reason for so doing. The petitioner shall be given an opportunity to reply to the proposed dismissal. In light of the reply, or on default thereof, the court may order the petition dismissed or grant leave to file an amended petition or direct that the proceedings otherwise continue. Disposition on the pleadings and record is not proper if there exists a material issue of fact.

SDCL 23–52–10.2 (1971) provided:

> The court may grant a motion by either party for summary disposition of the petition when it appears from the pleadings, any depositions, answers to interrogatories, and admis-

sions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, or when it appears that the issues raised have been adjudicated.

In 1983, the entire Uniform Post-Conviction Procedure Act, including summary disposition sections set out above, was repealed. 1983 S.D. Sess. Laws ch. 169, § 15. Also, in 1983, some of the repealed Post-Conviction Act statutes were then added to the habeas corpus section. *See, e.g.,* SDCL 23A–34–15 (1983) moved to habeas corpus section SDCL 21–27–16.1 via 1983 S.D. Sess.Law ch. 169, § 13; SDCL 23A–34–20 (1983) moved to habeas corpus section SDCL 21–27–18.1 via 1983 S.D.Sess.Laws ch. 169, § 14. Notable, is the legislature's decision not to include summary disposition statutes existing under the Uniform Post-Conviction Procedure Act within the revamped habeas corpus section. *See* SDCL ch. 21–27.

**3.** Hence, the habeas corpus procedure is in conflict with the summary judgment procedure, which is a part of civil procedure, notwithstanding the majority opinion's position.

ing be held. A bottom line exists in this struggle: Within the confines of an evidentiary hearing, governed by the procedural framework of the writ of habeas corpus, the truth of remarks made in front of the jury, during closing arguments, used to convict Reutter, may spring forth in order to determine if rights were violated by a nondisclosure of exculpatory information on the part of the State; in essence, evidence should be taken to determine if Reutter's constitutional rights were violated. Surely, Reutter's claims are neither patently frivolous nor palpably incredible. *See United States v. Sanfilippo*, 564 F.2d 176 (5th Cir.1977). In stating this, I take judicial notice of record filed in this Court in the case of *State v. Reutter*, 374 N.W.2d 617 (S.D.1985).