Effie H. DOUGHERTY, Plaintiff and Appellee,

v.

William Wayne DOUGHERTY, Defendant and Appellant.

No. 17506.

Supreme Court of South Dakota.

Considered on Briefs Dec. 2, 1991.

Decided March 11, 1992.

Stanley E. Whiting of Whiting Law Office, Winner, for plaintiff and appellee.

Paul E. Jensen of Jensen & Massa, Winner, for defendant and appellant.

AMUNDSON, Justice.

William Dougherty (husband) appeals from trial court's judgment that proceeds he obtained from a sale of property were subject to division pursuant to the divorce decree. We reverse and remand.

## FACTS

Effie Dougherty (wife) and husband were divorced in Tripp County in 1983. They were joint tenancy owners of approximately 2,480 acres of predominantly farm and ranch property in Tripp County. The divorce decree required the parties to use their best efforts to sell the property, then use the proceeds to satisfy a mortgage to Farmers Home Administration (FmHA), pay real estate taxes, costs of the sale, and capital gains taxes to either party. Wife was to receive $5400 from the proceeds to pay off existing debts, and the remaining balance was to be divided equally between the parties.

The parties were unsuccessful in their attempts to sell the property and FmHA subsequently foreclosed. FmHA was the successful bidder at the foreclosure sale on February 7, 1985, with a bid of $321,000, and neither husband nor wife attempted to redeem the property during the statutory one-year redemption period.[1] When the redemption period expired, FmHA received title to the property by a sheriff's deed on February 28, 1986. Since the indebtedness was substantially more than the value of the property, there were no available proceeds from the foreclosure sale to distribute between the parties in accordance with the 1983 divorce decree.

For two years and eight months after FmHA received title, the property was in the exclusive possession of FmHA, during which period the property was leased to several different tenants and FmHA sold the house which had been situated on the land.

Husband moved to Vermillion to pursue an education and remarried. In June, 1986, husband received notice from FmHA that, pursuant to the Food Security Act of 1985 (1985 Act),[2] he had the option to lease the real estate which FmHA had foreclosed upon. Husband did not exercise the option to lease.

In March, 1988, FmHA notified husband that, pursuant to the 1985 Act and 1988 amendments to the Agricultural Credit Act of 1987 (1987 Act),[3] he had the right to purchase the real estate for a price of $171,000, FmHA's appraised value of the land. FmHA did not give notice to wife of the option to purchase the real estate and the failure to give such notice is not attributable to any conduct on the part of husband.

Husband arranged to finance the purchase through his friend, Leo English, and in May, 1988, husband entered into a contract with FmHA to purchase the property. On October 17, 1988, husband completed the purchase from FmHA and he received and recorded the quit-claim deed which named him as the sole grantee. On October 28, 1988, husband quit-claimed the property to Leo English's son for $183,000, resulting in sale proceeds of $12,000.

Wife filed suit in January, 1989, seeking collateral enforcement of the property distribution terms of the 1983 divorce decree but did not bring an action at the time of the foreclosure for an adjustment of the property award in the divorce decree. The trial court held that the parties' rights in their former joint tenancy property ownership were still effective because their rights of redemption were not fully foreclosed due to the enactment of the 1987 Act and its amendments. The trial court entered judgment for wife, requiring the $12,000 proceeds of the 1988 sale be divided between the parties, pursuant to their 1983 divorce decree. Husband appeals.

## ISSUE

Whether the trial court erred in concluding that the enactment of certain federal statutes coupled with husband's purchase agreement with FmHA, operated to extend the statutory redemption period which had expired in 1986, thereby extending the parties' joint interests in the foreclosed property?

1. SDCL 21–52–11 provides in pertinent part: "All persons entitled to redeem shall in all cases have one year from the date of sale in which to redeem...."

2. This act may be found at 16 U.S.C. § 3801 et seq.

3. This act and its amendments may be found at 7 U.S.C. § 1985.

## ANALYSIS

■ This court reviews a trial court's findings of fact under the "clearly erroneous" standard and overturns a trial court's conclusions of law only when the trial court erred as a matter of law. *Jankord v. Jankord,* 368 N.W.2d 571 (S.D.1985); *Temple v. Temple,* 365 N.W.2d 561 (S.D.1985). Since the question presented to the trial court and in this appeal is entirely a matter of law, the trial court's decision is freely reviewable. *Appeal of Hendrickson's Health Care,* 462 N.W.2d 655, 656 (S.D. 1990); *Sharp v. Sharp,* 422 N.W.2d 443, 447 (S.D.1988).

■ The trial court in the present case concluded that the federal statutes (1985 Act, 1987 Act, and 1988 amendments) extended husband and wife's rights of redemption in the foreclosure action. It further concluded that under equitable principles, husband could not retain the $12,000 profit from the sale of the property and should instead divide it with wife pursuant to the 1983 divorce decree.[4]

SDCL 21–52–1 defines redemption as "the right to repay the amount paid for real property or any interest thereon, sold on foreclosure of a real estate mortgage...." The statutory redemption period is one year, and there are several statutory provisions which operate to extend the redemption period.[5]

The trial court found the redemption period was extended by SDCL 21–52–12 which provides, in pertinent part, that the period of redemption

> may be extended by a written agreement between the purchaser of the property ... and any redemptioner, provided such agreement is in writing, signed and acknowledged by the purchaser at such sale and recorded in the office of the register of deeds ... within one year from the date of sale....

There is no dispute that husband entered into a sales contract with FmHA on May 12, 1988, which was over three years after the foreclosure sale, or that the sales contract was never recorded with the register of deeds. It is the failure to enter into a written agreement and register same within one year as prescribed by the statute which negates the applicability of SDCL 21–52–12.

In Appeal of *AT & T Information Systems,* 405 N.W.2d 24, 27 (S.D.1987), we stated that:

> The intent of a statute is determined from what the legislatures (sic) said, rather than what the courts think it should have said, *Elk Point Ind. School Dist. No. 3 v. State Comm'n on Education and Secondary Education,* 85 S.D. 600, 187 N.W.2d 666 (1971), and the court must confine itself to the language used. *Ex parte Brown,* 21 S.D. 515, 114 N.W. 303 (1907).

> Words and phrases in a statute must be given their plain meaning and effect. *Board of Regents v. Carter,* 89 S.D. 40, 228 N.W.2d 621 (1975). When the language of a statute is clear, certain, and unambiguous, there is no reason for construction, and the court's only function is to declare the meaning of the statute as clearly expressed. *See, e.g., Petition of Famous Brands, Inc.,* 347 N.W.2d 882 (S.D.1984).

Since the legislature in SDCL 21–52–12 required an agreement which was "written, signed and acknowledged by the purchaser at such sale *and recorded* in the office of the register of deeds" we think it plain the legislature intended recording of the written instrument in order to effectuate an extension. Accordingly, we conclude that absent a recording of the sales contract with the register of deeds, the statutory requirements were not met and no extension of the redemption period was effectuated or intended under the facts of this case.

---

**4.** This division results in $8,700 going to wife. She would receive $5,400 to pay previously existing debts, then the remaining $6,600 would be divided equally. Husband would receive $3,300.

**5.** The provisions which extend the redemption period in specific instances may be found at SDCL 21–52–12; 21–52–13; 21–52–22 and 21–52–23.

The trial court also concluded that the redemption period was extended by application of the buy-back provision of 7 U.S.C. § 1985, which provides in pertinent part:

The Secretary shall give preference in the sale or lease, with options to purchase, of property that has been foreclosed, purchased, redeemed or otherwise acquired by the Secretary to persons in the following order:

(i) The immediate previous borrower-owner of the acquired property....

7 U.S.C. § 1985(e)(1)(C).

The trial court found since husband and wife were joint tenancy owners of the property, FmHA should have notified wife of her buy-back privileges at the same time husband was notified. The trial court further concluded there could not have been complete redemption to FmHA until both parties waived buy-back privileges, and since wife was never notified of the buy-back privileges, she did not waive them. Husband argues that once the sheriff's deed was executed to FmHA, all redemption rights were extinguished and the real estate was no longer within the equitable jurisdiction of the trial court. We agree.

A review of the record reveals that following the divorce, FmHA foreclosed on the mortgage, whereby husband and wife both had one year within which to redeem. Neither party attempted redemption within the one-year period, and FmHA took title to the property by a sheriff's deed in February, 1986. While we have never specifically addressed this issue, other courts have held that once the period for redemption expired and the sheriff's deed issued, the right of redemption was gone, and the mortgagor's property rights were extinguished. *In re Rice*, 42 B.R. 838 (Bkrtcy. S.D.1984); *In re Christian*, 48 B.R. 833 (D.Colo.1985). We now expressly adopt that rationale and hold that once FmHA took title, all redemption rights were extinguished. Therefore, the federal statutes did not operate to extend redemption rights, but instead created a new right to buy-back foreclosed property. As a result, the trial court did not have jurisdiction to enforce the marital property distribution portion of the 1983 divorce decree, since all marital property rights in the mortgaged property were extinguished when FmHA took title.

As per our holding that the right of redemption was extinguished in 1986, and in light of the fact wife never obtained extension of redemption nor sought modification of the property division, we find that husband acted lawfully within the confines of 7 U.S.C. § 1985 and is entitled to the total proceeds realized upon his exercise of the buy-back rights under the federal statutes.

The judgment of the trial court is reversed and remanded for entry of a judgment in accordance with this decision.

MILLER, C.J., and WUEST and HENDERSON, JJ., concur.

SABERS, J., dissents.

SABERS, Justice (dissenting).

I respectfully dissent. I would affirm the trial court.

I would agree with the majority opinion's technical and narrow construction of South Dakota's redemption laws *if* innocent third party purchasers *were* involved. However, that is not the case here. In fact, Effie's trial brief says it best:

The sale of the real estate by FHA to William Dougherty was a sham as far as William Dougherty remaining in the farming business. The practical effect of the transfer to Dougherty was a transfer to Greg English. This was made possible by Federal statutes that permitted Dougherty to [extend] the redemption period after the Sheriff's Deed was given to FHA. FHA regulations may not have been violated but this court has the equitable power to consider the transfer by Dougherty to English of the real estate as an effort by Dougherty to sell the real estate as required in the divorce decree. Consequently, the $12,-000.00 windfall should be distributed as required in the divorce decree.

William Dougherty and Greg English are taking advantage of the Federal Government's "largesse" at the taxpayer's expense. These two "divvied up" the benefits legislatively intended for economically deprived farmers. This is dead wrong. If this "windfall" is going to be permitted or tolerated, it should at least be applied against the $5,400 in existing debts as required by the divorce decree.