SUNNYWOOD COMMON SCHOOL DISTRICT NO. 46 OF MINNEHAHA COUNTY, et al., Respondents

v.

COUNTY BOARD OF EDUCATION OF MINNEHAHA COUNTY, Appellant

(131 N.W.2d 105)

(File No. 10116. Opinion filed November 2, 1964)

**William F. Clayton,** State's Atty., Sioux Falls, **Richard Hope-·well,** Deputy State's Atty., Sioux Falls, for appellant.

**Charles Lacey,** Sioux Falls, for respondents.

**John M. Theodosen,** Garretson, amicus curiae.

HOMEYER, J.   Appellant Board of Education of Minnehaha County, herein referred to as the county board, granted a petition changing the boundaries of Sunnywood Common School District No. 46 of that county, respondent and herein referred to as the Sunnywood district, by taking 2 7/16ths sections from that district and adding such territory to Garretson Independent School District No. 151 in the same county, herein referred to as the Garretson district.   The Sunnywood district and certain electors and taxpayers thereof appealed to the circuit court which by its judgment vacated and declared null and void the action of the county board.   The county board appeals.

The following sketch shows the land area and boundaries of the Sunnywood district before and after the proposed boundary change. The shaded portion was attached to the Garretson district; the unshaded area remained as the Sunnywood district.

The matter was submitted to the trial court on a written stipulation of facts. Attached thereto as exhibits were a copy of the master plan for school district reorganization in Minnehaha County and a map of the Sunnywood district similar to the above

sketch and showing additionally its relative location to and the size of adjoining districts, i. e., the Garretson district to the North and the Brandon Valley Independent School District No. 150 of Minnehaha County to the West and South. The stipulated facts show that the Sunnywood district comprising 8 sections of agricultural land had a 1962 assessed valuation of $590,437.00. U. S. Interstate Highway No. 90 bisects the southern tier of sections leaving two half-sections and a quarter-section south of such highway. The portion added to the Garretson district had a 1962 assessed valuation of $135,545.00. It represents about 21% of the assessed valuation and about 31% of the land area of the district. Other statistics for the 1961-1962 school year were as follows: receipts from all sources, $4,483.00; expenditures, $4,-348.00; no debt and cash balance on hand, $5,316.00; tax levy, general fund, 3.57 mills; equalization fund, 4.87 mills. In July 1962 there were 22 children of school age in the district, 13 of them enrolled in the district school; 7 children, 1 elementary and 6 secondary, residing within the district received their education elsewhere.

The district has one schoolhouse, a frame building in good repair, built about 40 years ago that has been maintained and operated as a one-teacher elementary school since such time; it has one large schoolroom, a library room, two large cloak rooms and is centrally heated. The schoolhouse is near the center of the district, but the proposed boundary change brings the area of the Garretson district within a half mile of the schoolhouse on two sides and places area of that district between it and about two sections still in the Sunnywood district.

The Garretson district includes about 85 sections of agricultural land, the city of Garretson and the town of Sherman, with a total assessed valuation of $7,049,979.00. The Brandon Valley district has an assessed valuation of $16,188,398.00 and comprises about 109 sections of agricultural land, the town of Valley Springs, and the large unincorporated residential community of Brandon. The Garretson district as presently constituted was formed after a school reorganization election held on January 26, 1962. At this election it was proposed that the whole area of the

Sunnywood district become a part of the Garretson district, but such proposal was rejected by the voters of the Sunnywood district by a 27 to 18 vote.

Following this election the matter of boundary change was considered by the county board at six different meetings. At the fifth meeting held on July 10, 1962, the following action was taken as disclosed by minutes of the meeting:

"Discussion of petition which had been presented by some residents of Common School District No. 46 asking their land be joined to the Reorganized Garretson District No. 151. Motion was made by F. M. Regan and seconded by Mr. Mosby to amend the petition by including only Section 17; the W½ of Section 16; the N½ of NE¼ of Sec. 20; and W½ and W½ of E½ and SE¼ of SE¼ of Sec. 21 instead of the original petition. Motion carried."

The propriety of the county board's action in **amending** and approving a petition of electors for boundary change has not been challenged and we express no opinion thereon.

On August 13, 1962, the county board reaffirmed its action. The petition is not a part of the record, but it is apparent the land area severed from the Sunnywood district was less than requested in the petition. On oral argument counsel stated if the petition had been granted as presented it would have included about 48% of the land in the Sunnywood district.

Chapter 73 of the 1961 Session Laws was the boundary change statute in effect when the petition was granted and reads in part as follows:

"Change of district boundaries. The county board shall have the power at its discretion upon proper petition as hereinafter provided to make **minor** boundary changes of any school district within its county without a vote of any electors providing the boundary change does not create any more or any less school districts than those

already in existence and providing such change meets the requirements and limitations for reorganization." (Emphasis supplied.)

■ This statute had its origin as a part of the reorganization portion of the Public School Revision Act of 1955.[1] It has been amended at every legislative session since that time, except for the 1964 session.[2] On two occasions this court has been divided in its construction, interpretation, and application.[3] The division occurred in deciding whether Section 20 pertaining to change of boundaries was a method of reorganization and so intended by the legislature, or whether it was intended to be operative only as an adjunct to reorganization after other methods authorized by statute had been utilized. This foundation for conflicting views was removed by passage of Ch. 69, Laws of 1961, when the legislature amended SDC 1960 Supp. 15.2001(1) by deleting from the definition of "Reorganization" the phrase "or any alteration whatsoever of school district boundaries." No longer can a change of boundaries be considered as a method of school district reorganization as that term is defined by statute, although in a broad sense, it still may be said that any alteration of school district boundaries, however slight, involves a realignment and some reorganization of existing school facilities. The same legislature for the first time inserted the word "minor" into the boundary change statute. A further restriction was also added.[4] The ambit of this limitation is not clear, but since its applicability has not been urged, we assume it did not prevent the action attempted by the county board in the instant case.

■ The creation, enlargement, consolidation, alteration and dissolution of school districts is a legislative function. Dunker. v. Brown County Board of Education, 80 S.D. 193, 121 N.W.2d 10.

---

1. Sec. 20, Ch. 8 of Ch. 41, Laws of 1955.

2. Sec. 3, Ch. 62, Laws of 1957; Sec. 2, Ch. 60, Laws of 1959; SDC 1960 Supp. 15.2017; Sec. 1, Ch. 73, Laws of 1961; Ch. 72, Laws of 1963.

3. Glenham Independent School District No. 12, Walworth County v. Walworth County Board of Education (Oct. 1959), 78 S.D. 63, 98 N.W.2d 348; Lafoon School District No. 12 of Faulk County v. Faulk County Board of Education (April 1961), 79 S.D. 103, 108 N.W.2d 467. These cases were decided under Ch. 62, Laws of 1957 in which the word "minor" does not appear.

4. Sec. 1, last para. Ch. 73, Laws of 1961: "Provided further that this section shall not be used by the electorate or the county board until a school district has been reorganized and the master plan of the county or the proposed school district adopted by the electorate as provided by law."

The legislature may delegate such authority to administrative boards, commissions and officers. Thies v. Renner, 78 S.D. 617, 106 N.W.2d 253. In the exercise of such delegated authority, the board acts as the agent of the legislature and its power is limited by the statute vesting the authority. The interpretation of the statute and defining the power under which the agency acts is a judicial question and reviewable by the courts. State ex rel. Cook v. Richards, 61 S.D. 28, 245 N.W. 901; Bandy v. Mickelson, 73 S.D. 485, 44 N.W.2d 341, 22 A.L.R.2d 1129.

■ The question before us in capsule form is whether the county board exceeded its power or misinterpreted its authority under Ch. 73, Laws of 1961 when it granted the petition for change of boundaries. Our construction of such statute is not influenced by any benefits or impediments arising from the laudable objectives incident to school district reorganization. If the county board made more than a minor boundary change as contemplated by the statute, it acted without authority and beyond its jurisdiction, and the courts must declare its action void.

■ ■ As stated in 67 C.J.S. Officers § 107a, "* * * Boards, commissions, and other public bodies have only such power and authority as are expressly conferred by law or as arise from necessary implication, and any power sought to be exercised must be found within the four corners of the statute under which they proceed. * * *" To the same effect is the general statement found in 1 Am.Jur.2d., Administrative Law, § 70. "Administrative agencies are creatures of statute and their power is dependent upon statutes, so that they must find within the statute warrant for the exercise of any authority which they claim. They have no general or common-law powers but only such as have been conferred upon them by law expressly or by implication." A county board of education is such an agency and its power is so limited. Haas v. Independent School District No. 1 of Yankton County, 69 S.D. 303, 9 N.W.2d 707.

■ ■ It is a cardinal rule of statutory construction that words used by the legislature are intended to convey their usual, ordinary, and popular meaning in the absence of circumstances showing a contrary intention. Bandy v. Mickelson, supra; Hehn v.

Aberdeen Glass Co., 74 S.D. 50, 48 N.W.2d 827. The argument is made that minor is the antonym of major; that major means more than one-half and consequently anything less than one-half is minor. We are not persuaded by this reasoning and we do not believe its usage by the legislature was so intended in relation to making changes in school district boundaries. On the contrary, we are of the opinion the legislature intended when using the word "minor" as an adjective to modify the noun "boundary" to mean slight, trivial, or unimportant as contradistinguished from material, substantial, and significant. This corresponds with the dictionary definition of minor, meaning "inferior in importance; comparatively unimportant" as found in Webster's Third New International Dictionary.

The boundary change statute is not a substitute for the election method of school district reorganization provided by SDC 1960 Supp. 15.2015, as amended by Ch. 72, Laws of 1961. Uncertainty as to the scope of its usage we believe was removed when the legislature added the word "minor" to the statute. The electorate's opportunity to petition for a change of boundaries should be confined to relatively unimportant or insignificant changes. It may be granted when in the conduct of established schools it is necessary in order to promote the convenience of patrons of the district, or to alleviate situations of hardship, or for other compelling reasons. The statute was not intended to provide a method whereby certain electors of an established operating district could accomplish their absorption into an adjoining district by petitioning the county board for a boundary change, when the result would be a substantial detriment, although not necessarily a catastrophic blow, to the district from which territory was being severed. The statute was not designed to authorize major surgery on school districts by detaching substantial portions of land area, school population, or assessed valuation from one established school district and adding it to another. If this is sought it should be accomplished by the elective process provided by statute which here was attempted, but defeated, only a few months before the county board granted the boundary change. A boundary change that takes 31% of the land area and 21% of the assessed valuation and leaves remaining the grossly irregular district shown by the sketch, supra,

is not a minor boundary change within the meaning of the statute. It must be borne in mind that the people in that part of the Sunnywood district which was not attached to the Garretson district were powerless to resist the attack on their territory, except by resort to the courts. In such cases courts must not hesitate to confine an administrative agency to its statutory authority.

Argument is also made that since the territory attempted to be added to the Garretson district represents only about 3% of the land area and about 2% of the assessed valuation of that district it comes within the scope of the dictionary definition of a minor boundary change. This may be true so far as the Garretson district is concerned, but we attach limited weight to such fact. In reviewing the history of this much amended statute at no time did the legislature see fit to require the approval or disapproval of the district to which territory was attached as a factor to be considered before making a boundary change. We can envision cases where the addition of an area with a substantial school population and a small tax base might seriously impede the successful operation of the larger school district, but such situations would be rare, and in most instances the larger district can absorb additional pupils and area without appreciable detriment or benefit. This is not true of the small district which is struggling to survive and we give primary importance to the injury sustained by such district in determining legislative intent as to what was meant by a minor boundary change.

Having concluded that the attempted change of boundaries was not minor, and thus beyond the power and jurisdiction of the county board, it is unnecessary to decide whether such board acted arbitrarily and abused its discretion in granting the boundary change.

The judgment of the trial court vacating the boundary change attempted by the county board is affirmed.

BIEGELMEIER, P. J., and RENTTO and HANSON, JJ., concur.

ROBERTS, J., dissents.