WARNER IND. SCHOOL DIST. NO. 230 of BROWN COUNTY et al., Appellants v. COUNTY BOARD OF EDUCATION OF BROWN COUNTY et al., Respondents

(179 N.W.2d 6)

(File No. 10710. Opinion filed July 29, 1970)

**Raymond M. Schutz, Agor, Siegel, Barnett & Schutz, R. D. Miller,** Aberdeen, for appellants.

**Lloyd C. Richardson, Jr., Voas, Richardson, Groseclose, & Kornmann, Roger Wollman,** Aberdeen, for respondents.

RENTTO, Judge.

This proceeding involves a school district boundary change made by the County Board of Education of Brown County when it took 2,000 acres of farm land from the Warner Independent School District No. 230 and transferred it to the Aberdeen Independent School District No. 32.

On February 28, 1967, William Ryman and his wife Olive presented to the County Board, their petition requesting the described transfer. The board at its meeting held that day, accepted the petition and tabled it for study. On May 10, 1967, the board granted the transfer as requested. The Warner district and the members of its board as such officials, and as residents and taxpayers of the district, appealed to the circuit court. After an evidentiary hearing the court made findings and conclusions favorable to the request and on February 25, 1969, entered its judgment affirming the action of the board. This appeal followed.

The Ryman family consists of the petitioners and their seven children. They farm all of the area involved in the

transfer which is located southwest of Aberdeen, and have their home thereon. Mr. Ryman's parents are its record owners. The family residence is 13 road miles from the city of Aberdeen and five miles from the town of Warner. Each route is an oiled highway except for two miles of gravel. The Aberdeen school bus comes by their house while the Warner bus presently goes two miles north of it. At the time of the trial their oldest child was in college in Aberdeen, while the other six were elementary or high school students.

None of their children ever attended school in the Warner Independent District. When the common school in their district was discontinued in 1962 the children began going to school in Aberdeen, but lived at home on the farm. This they did for the next two school years. The family then moved to Aberdeen where they bought a home in which they lived during the school year. While residing in Aberdeen Mr. Ryman commuted to the farm which the family continued to operate. When the school term ended in the spring of 1966 they moved back to the farm where they have since resided. Their children have continued attending school in Aberdeen.

After their return to the farm the Rymans, on June 8, 1966, presented to the County Board of Education a petition requesting the transfer of the land they farmed from the Warner district to the Aberdeen district. They apparently felt that the schools in Aberdeen offered a broader curriculum than was provided by the school in the Warner district. Also, because of past associations the children preferred to go to school in Aberdeen. The County Board granted their request. On appeal to the circuit court the board action was reversed, apparently because the Rymans at that time were not electors of the area.

These petitions were filed pursuant to SDC 1960 Supp. 15.2017 as amended by Ch. 73, Laws of 1961, Ch. 72, Laws of 1963 and Ch. 45, Laws of 1965. That section, so far as here pertinent, appears now as these two sections in SDCL:

13-6-84 "The county board of education is hereby authorized and shall have the power at its discretion

to make boundary changes of any school district within its county under conditions described in §§ 13-6-85 * * *".

13-6-85 "A minor boundary change, affecting not more than five per cent of the assessed valuation of the school district from which the area is to be taken, may be made upon an application for a boundary change made to the county board of education in the form of a petition signed by over fifty per cent of the electors residing in the area to be transferred by such boundary change."[1]

SDCL 13-6-86 contains that portion of the former section concerned with major boundary changes.

In its resolution granting the petition requesting the transfer the board found: (1) that it was signed by more than 50 percent of the electors residing in the area to be transferred by such boundary change; (2) that it does not affect more than five percent of the assessed valuation of the school district from which the area is taken; and (3) that such minor boundary change is in the best interests of the children involved in the change and education in Brown County. While not mentioned in the resolution it appears that the petitioners are the only electors residing in the area and that no children, other than theirs, are involved in the transfer.

On July 1, 1967, the Warner district had an assessed valuation of $5,451,570. As to the assessed valuation of the area transferred there is some difference of opinion. The appellants assert that its valuation is $82,505 while respondents use the figure of $80,865.50. This discrepancy, while unnecessary at this stage in the litigation, is of no significance. The court found that it "constituted less than five percent of the assessed valuation of the Warner District and in fact constituted one and a half percent of the assessed valuation of the Warner District." This finding is correct regardless of which valuation is assigned the area transferred.

---

1. Chapter 95, Laws of 1970, reduced the assessed valuation restriction from five percent to two percent.

It appears that the Aberdeen district continued to regard the Ryman children as resident students after they moved back to the farm in May 1966. Apparently the district did not request payment on their behalf of the tuition required of nonresident students. In any event, it was not paid. However, the Aberdeen district does not claim nor does the record show that the petitioners ever did any act or said anything to its officials, or anyone else, to indicate that despite their move to the farm they were claiming to be residents of the Aberdeen district.

Appellants' first contention is that the Rymans were not entitled to petition as resident electors of the area to be transferred. They do not dispute that the Rymans qualify as electors of Brown County. Nor is it questioned that they have resided on their farm in the Warner district since they moved back in 1966, and that they voted there in the general election on November 8, 1966. Their position is that because the Rymans did not pay nonresident tuition to the Aberdeen district they are estopped to claim that they are resident electors of the Warner district.

Even assuming this factual basis sufficient for an estoppel, their position is untenable. Estoppel may be claimed only by parties to the transaction, or their privies. A stranger can neither be bound nor aided by it. Pomeroy's Equity Jurispurdence, 5th Ed., § 813; 31 C.J.S. Estoppel § 130; 28 Am.Jur.2d, Estoppel and Waiver, § 115. Appellants are strangers to the matter urged as the basis for an estoppel. It involved only the Rymans and the Aberdeen district.

The provision permitting school district boundaries to be changed without a vote of the electors came into our present school law as Section 20, Ch. 8, of Ch. 41, Laws of 1955. It was amended by Section 3, Ch. 62, Laws of 1957. In this form it was considered by us in Glenham Independent School District v. Walworth County Board of Education, 78 S.D. 63, 98, N.W.2d 348. After that decision and probably as a result of it, the legislature by Ch. 73, Laws of 1961, confined the use of the procedure to changes that were minor. Sensing the practical difficulty of applying that imprecise guideline the legislature in Ch. 72, Laws of 1963, decreed

that a minor boundary change was one "affecting not more than five per cent of the assessed valuation of the school district from which the area is to be taken". While making other changes in the procedure, this limitation was retained in the law by Ch. 45, Laws of 1965.

■■■ The creation, enlargement, consolidation, alteration and dissolution of school districts is a legislative function which authority the legislature may delegate to county boards of education. The action of the board in carrying out a delegated function must be within the limitations prescribed in the delegating statute. Sunnywood Common School District No. 46 v. County Board of Education of Minnehaha County, 81 S.D. 110, 131 N.W.2d 105; Keiner v. Brule County Board of Education, 84 S.D. 50, 166 N.W.2d 833. Whether the board in a given situation has exceeded its delegated powers, is a matter for judicial determination.

■■ It is to be noted that under SDCL 13-6-84 and 13-6-85, those requesting the transfer of territory are not entitled to it solely because its assessed valuation does not exceed five percent of the assessed valuation of the district from which it is being taken. There is the further provision that even in that situation the exercise of the power is at the board's discretion. The courts may interfere with its action only when that discretion has manifestly been abused. Dunker v. Brown County Board of Education, 80 S.D. 193, 121 N.W.2d 10. Appellants' principal complaint here is that the board in this proceeding abused its legislative discretion.

■■■ They premise this in part on the claim that the board took its action without any evidence justifying the transfer. In our law there is no requirement that the board in disposing of petitions of this type hold a formal hearing. Since statutes authorizing the alteration of school district boundaries do not deny equal protection or due process of law, a hearing is not a constitutional requirement. Thies v. Renner, 78 S.D. 617, 106 N.W.2d 253. Moreover, we have held that school districts do not have a vested right to retain their existing status or territory. Nelson v. Deuel County Board of Education, 80 S.D. 559, 128 N.W.2d 554.

Obviously, the legislature felt that the seven local people constituting such boards would collectively have a sufficient general acquaintance with and knowledge of the educational problems and opportunities in the area of its jurisdiction, to fairly dispose of these petitions without necessity of taking evidence. The requirements as to their places of residence support this observation. SDCL 13-2-1 to 13-2-5. The county superintendent, state's attorney, county auditor and treasurer are required to act and serve as advisors to the board, SDCL 13-2-13, and it had the duty of consulting the county superintendent concerning the schools of the county. SDCL 13-2-15.

The action of the county board is presumed to be lawful until the contrary is clearly shown. Lafoon School District No. 12 v. Faulk County Board of Education, 79 S.D. 103, 108 N.W.2d 467. Establishing the latter is the burden of those attacking the order. Our study of this record discloses no facts to overcome the presumption of legality. To the contrary there was evidence before the court from which it could find, as it did, that the requested change would be in the educational best interests of the children involved.

Typical of this is the evidence that the Warner district employs only 17 teachers while the Aberdeen district has 280. Admittedly the Aberdeen system offers instruction in a greater variety of subjects than does the Warner district, and has a longer history of accreditation by the state. In writing of the legislative purpose of the statute permitting boundary changes on petition of the electors, in the Glenham case we said:

"It was intended thereby to provide a procedure through which electors of an area of a district might contribute to their convenience, or improve their educational or tax position by the transfer of their property to an adjoining existing district."

We therein held that the county board had discretion to prevent such transfer if it would be to the "critical detriment" of any of the involved district. It is manifest that the trans-

fer here involved does not result in that kind of detriment. In fact no one is so contending. Accordingly, we hold that in allowing the questioned transfer the board did not abuse its discretion, nor act arbitrarily or unreasonably. Fairview Independent School District v. County Board of Education of Hand County, 85 S.D. 53, 176 N.W.2d 742.

It is also urged that this boundary change procedure may not be availed of unless a master plan has been adopted for the county and is in effect. SDC 1960 Supp. 15.2005(1) is cited in support of this view. That section, which now appears as SDCL 13-6-8, provides that no reorganization shall take place until a master plan is adopted. However, it has no application here because since the effecttive date of Ch. 69, Laws of 1961, this type of boundary change has not been considered a form of school district reorganization.

In that same session the boundary change procedure was amended to specifically provide that it could not be used until a school district had been reorganized and a master plan adopted. Ch. 73, Laws of 1961. In Reliance Independent School District No. 9 v. Burull, 81 S.D. 372, 135 N.W.2d 737, we gave effect to this limitation. However, long before the Rymans filed this petition, that requirement was eliminated by the legislature. Ch. 72, Laws of 1963. Consequently it is not here applicable.

Affirmed.

ROBERTS, P. J., and BIEGELMEIER, J., concur.

HANSON and HOMEYER, JJ., dissent.

HANSON and HOMEYER, JJ. (dissenting).

We respectfully dissent. This court in Dunker v. Brown County Board of Education (1963), 80 S.D. 193, 121 N.W.2d 10, recognized the creation, enlargement, consolidation or dissolution of school districts was a legislative function. Nevertheless, it is our opinion this court did not intend to abdicate virtually all judicial responsibility and give carte blanche approval to any and all actions of an administrative agency

in the reorganization of school districts including boundary changes.

This court said in Sunnywood Common School District v. County Board of Education of Minnehaha County (1964), 81 S.D. 111, 131 N.W.2d 105, that the "electorate's opportunity to petition for a change of boundaries should be confined to relatively unimportant or insignificant changes. It may be granted when in the conduct of established schools it is necessary in order to promote the convenience of patrons of the district, or to alleviate situations of hardship, or for other compelling reasons. The statute was not intended to provide a method whereby certain electors of an established operating district could accomplish their absorption into an adjoining district by petitioning the county board for a boundary change, when the result would be a substantial detriment, although not necessarily a catastrophic blow, to the district from which territory was being severed. The statute was not designed to authorize major surgery on school districts by detaching substantial portions of land area, school population, or assessed valuation from one established school district and adding it to another. If this is sought it should be accomplished by the elective process provided by statute * * *. In reviewing the history of this much amended statute at no time did the legislature see fit to require the approval or disapproval of the district to which territory was attached as a factor to be considered before making a boundary change. We can envision cases where the addition of an area with a substantial school population and a small tax base might seriously impede the successful operation of the larger school district, but such situations would be rare, and in most instances the larger district can absorb additional pupils and area without appreciable detriment or benefit. **This is not true of the small district which is struggling to survive and we give primary importance to the injury sustained by such district in determining legislative intent as to what was meant by a minor boundary change.**" (Emphasis supplied.)

Using Dunker as precedent in conjunction with our pronouncements in Sunnywood, it is our opinion the Brown County Board of Education acted unreasonably, arbitrarily

and manifestly abused its discretion in granting the petition for a boundary change. It transferred 2,000 acres of land with an assessed valuation of $82,505.00 from the struggling Warner district to the large Aberdeen district for no reason other than the desire of the Ryman family to have their children educated in the Aberdeen school rather than in the Warner school.

The Warner district is situated along an irregular boundary south of the Aberdeen district. The map of the two districts reveals a crazy-quilt pattern with isolated areas situated within the boundaries of one district but attached to the other. The property sought to be transferred is located in the approximate center of the Warner district. It does, however, adjoin an isolated area attached to the Aberdeen district. This isolated area is entirely surrounded by the Warner district on the north, east, and west. A Spink County district bounds it on the south. To serve this isolated area the Aberdeen school bus must drive past the town of Warner and cross over the north half of the Warner district. The land sought to be transferred comes within three miles of Warner and the Ryman residence is about 16 miles from the Aberdeen school. In attending the Aberdeen school the Ryman children will necessarily have to travel considerably farther and longer than if they attended the Warner school.

This is not a temporary pupil assignment case where the wish of the parents is a controlling consideration. Instead, this involves the permanent transfer of taxable property from one district to another. In our opinion it is neither reasonable nor right to transfer property from the center of the small Warner district to the large Aberdeen district to satisfy the desire of one family to attend a larger school. By enlarging the isolated Aberdeen island in the heart of the Warner district a pre-existing mistake is aggravated. The confusion, duplication, and cost will increase. In its struggle to provide equal educational opportunities for its school children, the Warner district needs a larger tax base and not a smaller one. This is an obvious and inescapable conclusion.

In our opinion the trial court erroneously affirmed the action of the county board on the theory that any boundary

change so long as it involved less than five percent of the assessed valuation was not subject to judicial review.

We would reverse.