#27330-a-DG

**2015 S.D. 87**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CHRIS SCHAEFER, et al.,
Petitioners and Residents
of Westwood Valley,                                        Appellants,

v.

TEA AREA SCHOOL DISTRICT 41-5,                            Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE DOUGLAS E. HOFFMAN
Judge

* * * *

SAMUEL M. GOODHOPE
LAURA T. BRAHMS of
Kading, Kunstle & Goodhope, LLP
Sioux Falls, South Dakota                    Attorneys for appellants.


WILLIAM G. BECK
JOEL E. ENGEL III of
Woods, Fuller, Shultz
 & Smith, PC
Sioux Falls, South Dakota                    Attorneys for appellee.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 5, 2015
OPINION FILED **11/10/15**

#27330

GILBERTSON, Chief Justice

[¶1.]        Chris Schaefer appeals the Tea Area School Board's (the Board) denial of his request for a minor boundary change. If granted, the change would have resulted in the detachment of Schaefer's and other property from the Tea Area School District (TASD) and the annexation of the same to the Sioux Falls School District (SFSD). Schaefer asserts the denial was an abuse of discretion. We affirm.

**Facts and Procedural History**

[¶2.]        The city of Sioux Falls spans at least eight different school districts.[1] The TASD, one of those districts, was created in 2004 by the Lennox School District 41-4 Reorganization Plan. This plan was approved by the Department of Education in 2003. The TASD covers the city of Tea and includes portions of southwest Sioux Falls. One such area is the Westwood Valley Addition to Sioux Falls, which is located in Sioux Falls but is a part of the TASD. On February 7, 2014, four residents of Westwood Valley—Chris and Crystal Schaefer, Kirsten Dunlap, and Nancy VonHaden (the Petitioners)—submitted a petition (the Petition) to the Board requesting the TASD's boundary be changed to exclude their residences, which would instead be annexed by the SFSD.

[¶3.]        The Schaefers moved from the SFSD and into their current home in the TASD in 2007. They were aware that their new home was located in the TASD prior to purchase. They have one child, who attended school in the TASD from kindergarten through sixth grade before transferring to the SFSD for the seventh

---

1.        In addition to the SFSD and the TASD, portions of Sioux Falls also lie in the Brandon Valley, Canton, Harrisburg, Lennox, Tri-Valley, and West Central School Districts

grade through open enrollment. She will begin high school in the fall of 2016. Prior to school, she attended daycare in Tea. The Schaefers are members of the Family Wellness Center, located several blocks from their home, within the TASD. Until recently, the Schaefers used the services of a veterinarian in Tea. According to the Schaefers, they otherwise work, worship, and socialize in Sioux Falls but not in Tea.

[¶4.]		Dunlap moved into the TASD from the SFSD in 2009. She was also aware that her new home was located in the TASD prior to purchase. She has four children of ages 10, 9, 8, and 6. All four children attend elementary school in the SFSD through open enrollment. One of Dunlap's children has special needs and is on an individualized education program. Like the Schaefers, Dunlap asserts that she works, worships, and socializes in Sioux Falls but not in Tea.

[¶5.]		VonHaden moved from the SFSD and into the TASD in 2013. She, too, was aware that her new home was located in the TASD. She has four children of ages 11, 10, 8, and 6. All four children attend school in the SFSD through open enrollment. One of VonHaden's children has special needs and is on an individualized education program. Like the Schaefers and Dunlap, VonHaden asserts that works, worships, and socializes in Sioux Falls but not in Tea.

[¶6.]		After the Petitioners submitted the Petition on February 7, 2014, the Board sent a letter to the Petitioners requesting, among other things, more information regarding the Petitioners' children and employers. The Petitioners did not provide this additional information to the Board. The Board held a publicly noticed meeting to consider the Petition on March 25, 2014. None of the Petitioners

appeared at the hearing either personally or through counsel. The Board

unanimously passed a resolution denying the petition.

[¶7.] Schaefer appeals, and we consider the following issues:

1. Whether the notice of appeal was defective because it failed to individually name each of the Petitioners.

2. Whether the denial of the petition for minor boundary change was arbitrary, capricious, or an abuse of discretion.

**Standard of Review**

[¶8.] Any person aggrieved by a school board decision may appeal that

decision. SDCL 13-46-1. If appealed to the circuit court, "[t]he trial . . . shall be de

novo[.]" SDCL 13-46-6. However, "[s]chool boards are creatures of the

Legislature[,]" *Onnen v. Sioux Falls Indep. Sch. Dist. No. 49-5*, 2011 S.D. 45, ¶ 8,

801 N.W.2d 752, 755 (quoting *Hicks v. Gayville–Volin Sch. Dist.*, 2003 S.D. 92, ¶ 10,

668 N.W.2d 69, 73), and "[t]he creation, enlargement, consolidation, *alteration* and

dissolution of school districts is a legislative function which authority the

[L]egislature may delegate to county boards of education[,]" *Warner Indep. Sch.

Dist. No. 230 v. Brown Cty. Bd. of Educ.*, 85 S.D. 161, 167, 179 N.W.2d 6, 9 (1970)

(emphasis added). The separation of powers required by our constitution prevents a

court from interfering with a school board's decision "unless the decision is made

contrary to law." *Onnen*, 2011 S.D. 45, ¶ 8, 801 N.W.2d at 755 (quoting *Hicks*, 2003

S.D. 92, ¶ 10, 668 N.W.2d at 73). Consequently, although SDCL 13-46-6 uses the

term *de novo*, that statute "may not be given a literal construction." *Mortweet v.

Ethan Bd. of Educ., Davison Cty.*, 90 S.D. 368, 372, 241 N.W.2d 580, 582 (1976)

(quoting *Dunker v. Brown Cty. Bd. of Educ.*, 80 S.D. 193, 203, 121 N.W.2d 10, 17

#27330

(1963)). "[T]he trial de novo required by SDCL 13-46-6 permits an independent inquiry into the facts," *id.* at 373, 241 N.W.2d at 582-83, but "[o]nly the legality of the decision, not the propriety of the decision, may be reviewed by the courts[,]" *Onnen*, 2011 S.D. 45, ¶ 8, 801 N.W.2d at 755 (quoting *Hicks*, 2003 S.D. 92, ¶ 10, 668 N.W.2d at 73). "[T]he court may [not] substitute its judgment for that of the board" and need not "justify its decision by a preponderance of the evidence received in the trial de novo." *Mortweet*, 90 S.D. at 374, 241 N.W.2d at 583. Thus, a school board's decision will be upheld if it is procedurally regular and is not arbitrary, capricious, or an abuse of discretion. *Onnen*, 2011 S.D. 45, ¶ 8, 801 N.W.2d at 755. Under this standard,

> [a] reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the [board]." The [board] must articulate a "rational connection between the facts found and the choice made."

*Marshall v. Knutson Constr. Co.*, 566 F.2d 596, 600-01 (8th Cir. 1977) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86, 95 S. Ct. 438, 442, 42 L. Ed. 2d 447 (1974). "The proper scope of review for this court is the same as that of the circuit court." *Oelrichs Sch. Dist. 23-3 v. Sides*, 1997 S.D. 55, ¶ 9, 562 N.W.2d 907, 911.

### Analysis and Decision

[¶9.]      *1.    Whether the notice of appeal was defective because it failed to individually name each of the Petitioners.*

-4-

[¶10.]     Before addressing the merits, we must first address an issue raised by the Board. As the Board points out, Chris Schaefer is the only named appellant in this case. The notice of appeal filed by the original petitioners identifies "Appellants" as "Chris Schaefer, et al., Petitioners and Residents of Westwood Valley." The Board asserts that "[b]y using the ambiguous term 'et al.,' the only individual who actually timely served and filed a notice of appeal was Chris Schaefer. Crystal Schaefer, VonHaden, and Dunlap have never filed or served a notice of appeal, and the deadline to do so has now passed. This is a fatal jurisdictional defect. . . . As such, the pending appeal must be dismissed, because this Court cannot grant relief to Chris Schaefer alone." We disagree.

[¶11.]     Schaefer is permitted to appeal the denial individually. The Board's argument to the contrary is based on this Court's prior statements that a school board may not partially approve or partially disapprove a petition. *Aman v. Edmunds Cent. Sch. Dist. No. 22-5*, 494 N.W.2d 198, 199 (S.D. 1992). However, the Board has not directed our attention to any authority requiring all original petitioners of a request for a minor boundary change to join in an appeal of a school board's denial of that petition. On the contrary, SDCL 13-6-85 provides that "[a]ny *petitioner* who is aggrieved by a decision of the school board under this section may appeal that decision." (Emphasis added.) The word *petitioner* is written in the singular form even though the very same paragraph requires that all "*owners* of land" sign the "final plan of detachment and annexation" that must be appended to a petition for a minor boundary change. *Id.* (emphasis added). Thus, SDCL 13-6-85 clearly permits an individual petitioner to appeal the denial of a petition for minor

boundary change even when his co-petitioners choose not to appeal (or ineffectively attempt to appeal). As the Board itself notes, Chris Schaefer timely filed a notice of appeal. Consequently, even if the use of "et al." on the notice of appeal would prevent our consideration of an appeal of the Board's denial of the Petition initiated by the other original petitioners, Chris Schaefer's appeal is still properly before us.

[¶12.]     ***2.     Whether the denial of the petition for minor boundary change was arbitrary, capricious, or an abuse of discretion.***

[¶13.]     Turning to the merits, Schaefer asserts that the Board's denial of the Petition was arbitrary, capricious, or an abuse of discretion and was therefore illegal.[2] A school board's decision must be "supported by substantial, competent evidence" to be legal. *Kirby v. Hoven Sch. Dist. No. 53-2*, 2004 S.D. 100, ¶ 7, 686 N.W.2d 905, 907.

> Substantive factors we have previously looked to in evaluating decisions concerning minor boundary changes include: (1) whether the petitioners are more closely aligned to the economic, social and religious life of the community into which they are being transferred; (2) whether there is bus service to the [petitioners'] residence[s]; (3) whether the district line which places their propert[ies] in the current district was drawn in an arbitrary fashion; (4) whether [petitioners' children have] special needs best met in the district petitioners are attempting to join; and (5) whether the petitioners live closer to the school district they are joining as opposed to the district they are leaving.

*Oldham–Ramona Sch. Dist. No. 39-5 v. Ust*, 502 N.W.2d 574, 581 (S.D. 1993) (citing *Shumaker v. Canova Sch. Dist. No. 48-1*, 322 N.W.2d 869, 871 (S.D. 1982)). This list of factors is not exclusive. *See Sides*, 1997 S.D. 55, ¶ 28, 562 N.W.2d at 913 ("[E]conomic factors, *in conjunction with other relevant factors*, are a valid

---

2.     There is no dispute that the Petition met the statutory prerequisites for consideration by the Board.

consideration by the school board in considering a petition."); *Shumaker*, 322 N.W.2d at 871 (enumerating for the first time the above five factors as a subset of a larger list of relevant facts). We have never held that all five of these factors are relevant to every petition for a minor boundary change. *See Colman–Egan Sch. Dist. No. 50-5 v. Jones*, 520 N.W.2d 890, 893 (S.D. 1994) (declining to consider the petitioner's alignment with the target district after concluding the petitioner "moved into the new school district with full knowledge that a change in schools would be required unless a minor boundary change could be secured"). Rather, the purpose of our frequent recitation of these five factors is merely "*to aid our review* in minor boundary change decisions[.]" *Kirby*, 2004 S.D. 100, ¶ 7, 686 N.W.2d at 907 (emphasis added).[3]

[¶14.]          a.          *Petitioners' community alignment*

[¶15.]          We first consider whether the petitioners are more closely aligned to the economic, social, and religious life of the community into which they are being transferred. Schaefer asserts the Petitioners are more closely aligned with the

---

3.          Schaefer asserts that two of our more recent cases seem to suggest that a school board is required to address each of these five factors. *See Johnson v. Lennox Sch. Dist. No. 41-4*, 2002 S.D. 89, ¶ 11, 649 N.W.2d 617, 621-22 (per curiam) ("Under settled law, the [five] factors must be considered in reviewing a boundary change petition . . . ."); *Smith v. Canton Sch. Dist. No. 41-1*, 1999 S.D. 111, ¶ 9, 599 N.W.2d 637, 640 ("The 'fixed rules or standard,' previously set forth by this Court, to which the Canton School Board's decision must adhere to avoid a finding of arbitrariness on review includes the following . . . ."). As previously discussed, our other decisions refute the notion that an analysis of each of these five factors is mandatory in every case. *Johnson* cites *Smith*, which cites *Sides* for this proposition. However, in *Sides*, just as in every other decision prior or subsequent to *Johnson* and *Smith*, we merely indicated that "this Court previously has looked to five substantive factors in reviewing minor boundary change decisions[.]" *Sides*, 1997 S.D. 55, ¶ 11, 562 N.W.2d at 911.

community of Sioux Falls than with the community of Tea because they live, "work, shop, obtain medical and dental treatment, participate in extra-curricular activities, and socialize in Sioux Falls." In concluding this factor did not favor a boundary change, the Board said: "The board recognizes that many patrons of the [TASD] probably share, at the very least, an alignment to both Sioux Falls and Tea, but does not believe that such a shared alignment favors transfer of the property subject to the . . . [P]etition because of Tea's unique status as a suburb (bedroom community) of Sioux Falls, South Dakota's largest city." Similarly, although the circuit court concluded that this factor favored the Petitioners, the court nevertheless determined the factor was "inapplicable because of the unique relationship between Sioux Falls and its surrounding communities." We agree that this factor is inapplicable because of the unique circumstances of this case as well as the fact that at least one, if not all, of the Petitioners willingly moved into the TASD, gambling on receiving a minor boundary change.

[¶16.] The analysis on this point—from the parties as well as the Board and the circuit court—revolves around two of our past decisions on minor-boundary-change petitions that appear to be at odds with one another: *Johnson v. Lennox School District No. 41-4*, 2002 S.D. 89, 649 N.W.2d 617 (per curiam), and *Oelrichs School District No. 23-3 v. Sides*, 1997 S.D. 55, 562 N.W.2d 907. Similar to the present case, *Johnson* involved a petition for minor boundary change for property that was located in Sioux Falls but was part of the Lennox School District.[4] The

---

4. This petition occurred prior to the reorganization of the Lennox School District that created the TASD.

Sioux Falls School Board voted to approve the annexation, but the Lennox School District denied the petition. Although we concluded the board had not "adequately assess[ed] the factor of alignment with the community[,]" we noted:

> An important fact distinguishing this case from many boundary change cases is that the Petitioners actually live in the community to which they are seeking a transfer. Thus, contrary to the findings of the Board, these Petitioners are not mere commuters to Sioux Falls, but are actually Sioux Falls residents.

*Johnson*, 2002 S.D. 89, ¶ 13, 649 N.W.2d at 622. Likewise, Schaefer here asserts that the fact that the Petitioners all reside in the community of Sioux Falls supports their petition for transfer into the SFSD.

[¶17.] *Sides* also presents a factual scenario analogous to the present case. In *Sides*, residents of Smithwick requested their property be transferred from the Oelrichs School District to the Hot Springs School District. 1997 S.D. 55, ¶ 2, 562 N.W.2d at 909. Similar to the present case, the petitioners asserted "that they do their grocery shopping in . . . Hot Springs rather than . . . Oelrichs, and that they use Hot Springs for legal, medical, and government services." *Id.* ¶ 16, 562 N.W.2d at 912. However, the circuit court found that

> [i]t is not unusual for many Oelrichs School District residents to go to Hot Springs for county services, health care, legal services, dental care, accounting services and veterinarian services. In fact, most residents probably leave the Oelrichs School District for these and many other things. Oelrichs is not a county seat. There is not a doctor in Oelrichs. There are no lawyers . . . dentist . . . accountant . . . veterinarian . . . bank . . . government offices in Oelrichs.

*Id.* We rejected the petitioners' argument, noting that "[i]f we were to adopt [their] logic, . . . it would appear that no one is closely aligned to the Oelrichs District." *Id.* The Board asserts that the greater availability of goods and services in Sioux Falls

means that residents of the outlying Sioux Falls developments will always have a stronger alignment with Sioux Falls.

[¶18.] The foregoing highlights a problem with the first enumerated factor. With the exception of *Johnson*, our other decisions regarding SDCL 13-6-85 have primarily dealt with more rural areas. In such a setting, a community is usually fully surrounded by its applicable school district—e.g., the *community* of Tea is located entirely within the boundaries of the Tea *school district*. In such a case, an alignment to a community fully contained within a school district is almost synonymous with a connection to the school district itself. A problem arises, however, when a community is not fully contained within a single school district— i.e., when more than one school district exists within a community. Such is the present case: the Petitioners all live within the community of Sioux Falls but in an area that is a part of the TASD. In such a case, we have declined to consider a petitioner's alignment to the multi-district *community* as supporting a connection with one of the *districts* but not the other. *See Sides*, 1997 S.D. 55, ¶ 17, 562 N.W.2d at 912 ("While these activities may occur in the Hot Springs District, they actually are conducted at Smithwick, which by the [petitioners'] own admission is divided between the two School Districts."). The Petitioners, who claim an alignment to Sioux Falls by virtue of working, shopping, socializing, etc., at various locations across the community, can hardly disclaim an alignment to the subset of that community in which they reside—i.e., that area of Sioux Falls that happens to fall within the geographic limits of the TASD. As in *Sides*, because the community of Sioux Falls exists in both the TASD and the SFSD, the Petitioners' alignment

with the community of Sioux Falls does not weigh in favor of transfer to one district over the other.

[¶19.] Even if we applied this factor and concluded that the Petitioners are more closely aligned with the SFSD, this factor would not support the conclusion that the Board's decision was arbitrary, capricious, or an abuse of discretion in this case. As noted above, we have previously declined to consider this factor when a petitioner has willingly moved into a school district and gambled that he or she would be granted a minor boundary change. In *Jones*, the petitioners had lived in Flandreau, which is located within the Flandreau School District, for approximately 11 years before moving to a new home within the neighboring Colman–Egan School District. 520 N.W.2d at 891. Just like each of the Petitioners in the present case, the petitioners in *Jones* were fully aware at the time they purchased their new home that it was located in a different school district. *Id.* In rejecting the petitioners' ties with the Flandreau community, we said:

> [The petitioners] purchased their new property with full knowledge of its location in the Colman–Egan School District. Thus, this is not a case like many others before this court where school district reorganization has thrust a family into the position of changing schools but a case where the petitioners voluntarily moved into the new school district with full knowledge that a change in schools would be required unless a minor boundary change could be secured. In short, [the petitioners] gambled on the possibility of changing school district boundaries and lost. Thus, it is difficult to place any significant degree of emphasis on the ties [the petitioners] might have in Flandreau given their voluntary gamble with those ties.

*Id.* at 893. Here, each of the Petitioners knew that his or her current home was located within the TASD prior to purchasing the home. In particular, VonHaden

signed her first petition for minor boundary change a mere eight days after closing on her home. Such is as much a gamble as it was in *Jones*.

[¶20.]    The Petitioners' alignment to the community of Sioux Falls establishes their connection to the TASD as well as to the SFSD. Additionally, it appears as if at least one of the Petitioners consciously chose to move into the TASD, gambling that the Board would grant a petition for a minor boundary change. Therefore, the community-alignment factor does not suggest the Board's decision was arbitrary, capricious, or an abuse of discretion.

[¶21.]    b.    *Bus service*

[¶22.]    The TASD currently provides bus service to the area identified in the Petition for all students as well as free parking to any students who drive to school. In contrast, the SFSD does not provide bus service to the same area for students attending high school. Public bus service is also not available in the area. Additionally, students wishing to park their vehicles at Roosevelt High School are required to purchase a permit. For each of the last two academic years, the number of students has exceeded the number of available permits.[5] The SFSD currently provides bus service to the Petitioners' children even though that district's official policy makes the parents of an open-enrolled student responsible for transporting the student. Although Schaefer asserts in his brief that bus service to the SFSD would be "shorter and safer as the routes are on residential streets[,]" such

---

5.    In his brief, Schaefer asserts "[t]he Sioux Falls School District has anticipated 'very substantial' growth on the west side of Sioux Falls." If true, the disparity between the number of students and available permits can be expected to increase.

arguments—even if supported[6]—are aimed at the wisdom of the Board's decision, not its legality. "[U]nder the narrow standard of review, this Court finds there was sufficient evidence to show the evidentiary advantage was with the [Tea] District" *See Sides*, 1997 S.D. 55, ¶ 20, 562 N.W.2d at 912 (rejecting assertion that bus service that is "more convenient, takes less time[,] and is on better roads" rendered school board's denial of petition for minor boundary change illegal where transportation arrangements in current district were otherwise superior to target district). Therefore, this factor does not suggest the denial of the Petition was arbitrary, capricious, or an abuse of discretion.

[¶23.]        *c.        District line*

[¶24.]        The current district lines largely resulted from the Lennox School District 41-4 Reorganization Plan. Unlike the western edge of the TASD, where individual property owners were permitted to choose between the Lennox and Tea school districts after the formation of the latter, the area involved in this dispute features a relatively straight division between the SFSD and the TASD. However, there is a small peninsula of the SFSD that extends into the TASD as a result of prior minor boundary changes. In this case, granting the Petition would serve to further blur the otherwise clean boundary between the two school districts. Further, the previous changes were approved prior to the TASD's decision to construct a new elementary school in Sioux Falls. Although district boundaries may become arbitrary with the passage of time, *see Johnson*, 2002 S.D. 89, ¶ 22, 649 N.W.2d at 623-24, the same reasoning suggests that previously arbitrary

---

6.        Schaefer does not cite to the record to support this assertion.

boundaries can be restored to reasonable by virtue of additional planning. Thus, either because the original district lines have always been reasonable or because the Tea School Board has a strategic plan for the existing boundaries, this factor does not suggest the denial of the Petition was arbitrary, capricious, or an abuse of discretion.

[¶25.]        d.        *Special needs of the children*

[¶26.]        Dunlap and VonHaden each asserted she has a child with special needs. The circuit court concluded the Petitioners waived this argument by "fail[ing] to provide the [TASD] with information regarding the special needs of two of the [Petitioners'] children, even after the [Board] requested such information prior to making its decision." We agree with the circuit court. As noted above, the appellate function of the courts must not intrude upon the legislative authority delegated to school boards by the Legislature. *Warner Indep. Sch. Dist. No. 230*, 85 S.D. at 167, 179 N.W.2d at 9. When evidence of new facts is first presented to the circuit court and not to the school board, the board is deprived of the opportunity to weigh that evidence. Any resulting appellate decision based in part on such evidence necessarily bypasses—to some degree—the decision-making authority delegated by the Legislature to the school board. Although the de novo trial authorized by SDCL 13-46-1 and -6 "permits an independent inquiry into the facts," it does so "only for the purpose of passing on the legality of the board's decision." *Mortweet*, 90 S.D. at 373-74, 241 N.W.2d at 582-83. If the Petitioners did not offer proof to the Board that their children had special needs, then such proof is not relevant on appeal to determine whether the Board "examine[d] the relevant data

and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Assoc. of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 2866 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168, 83 S. Ct. 239, 245-46, 9 L. Ed. 2d 207 (1962)). In other words, on appeal to the circuit court, the parties may present evidence to prove which facts were presented to the school board; the parties may not present evidence to prove facts not presented to the school board.

[¶27.] Even if the circuit court had considered this new evidence, the evidence does not support application of the special-needs factor in favor of the Petition. Dunlap testified that her son has a "cognitive impairment" and that she is very satisfied with the educational assistance provided to her son by the SFSD. Likewise, VonHaden testified that she was pleased with the special instruction her son receives in the SFSD. However, we have remarked before that "[p]ersonal preference is not a sufficient basis for granting a boundary change petition." *Sides*, 1997 S.D. 55, ¶ 27, 562 N.W.2d at 913. The relevant factor examines whether the child's needs are *best* met by the target district. *Kirby*, 2004 S.D. 100, ¶ 7, 686 N.W.2d at 907. When asked about her knowledge of the TASD's ability to meet her son's needs, Dunlap was unable to provide any information. The following exchange occurred during the cross-examination of Dunlap during trial:

> **[The Board's Attorney]**: Do you have any firsthand knowledge about the ability of the [TASD] to provide [individualized education plans] to any child?
>
> **[Dunlap]**: I actually don't, and I asked.

> **[The Board's Attorney]**: When you say you, "asked," you asked a question about IEP's at the bond meeting; is that correct?
>
> **[Dunlap]**: Correct.
>
> **[The Board's Attorney]**: So you stood up at a public meeting and asked a representative of the [TASD] a very general question about individual education plans?
>
> **[Dunlap]**: Right.
>
> **[The Board's Attorney]**: You didn't ask about your specific son. Correct?
>
> **[Dunlap]**: No, I didn't.
>
> **[The Board's Attorney]**: Let's talk about that meeting. . . . That meeting took place in 2013. Correct?
>
> **[Dunlap]**: Right.
>
> **[The Board's Attorney]**: And your petition was submitted in 2014?
>
> **[Dunlap]**: Correct.

VonHaden similarly testified during cross-examination at trial.

> **[The Board's Attorney]**: Is it fair to say that you know nothing about the [TASD's] abilities or inability to deal with children with special needs?
>
> **[VonHaden]**: Correct.

Without an assessment of the TASD's ability to meet the special needs of a student, it is necessarily impossible to determine that the SFSD can better meet those needs. The circuit court found that the TASD "offers all services required by federal and state law to children with special needs residing in the district." It further found that TASD Superintendent Lowery testified that the TASD "could provide its own team of individuals to provide a comparable individualized education plan" for Dunlap's and VonHaden's children. Therefore, this factor does not suggest the denial of the Petition was arbitrary, capricious, or an abuse of discretion.

[¶28.]        *e.        Distance to the districts*

[¶29.]    The new Tea Area North Elementary School is being constructed closer to the Petitioners' residences than any other school in the Sioux Falls School District. Roosevelt High School and Memorial Middle School are both less than two miles away from Schaefer's residence, while the Tea Area Middle School and the Tea Area High School are between five and six miles away. Although this could result in up to an extra five miles of travel distance for a student in middle or high school, we have previously held that even a "twelve mile difference is not so significant as to result in much longer bus rides[.]" *Ust*, 502 N.W.2d at 584. Given the deferential standard of review in a case like this, a minor, mathematical decrease in mileage does not support the conclusion that a petition has been improperly denied. In order to so conclude, there must be a clear disparity in travel time between the subject property and the two districts. Therefore, this factor does not suggest the denial of the Petition was arbitrary, capricious, or an abuse of discretion.

[¶30.]    *f.    Economic factors*

[¶31.]    Schaefer asserts that the Board was "primarily preoccupied with its own economic concerns." According to Schaefer, "the Board . . . wrongfully relied on the hypothetical financial impact that the boundary change may have on the district." It is true that "[w]e have previously criticized a school board's *excessive* reliance on economic factors as a basis for denial of a boundary change petition." *Id.* at 582 (emphasis added). Here, the Board did express some concern that granting the Petition would invite further petitions from other residents. However, "we have never held that a school district's economic interests are irrelevant in considering a

boundary change petition." *Id.* On the contrary, "economic factors, in conjunction with the other relevant factors, are a valid consideration for a school board in ruling on a petition for a minor boundary change." *Id.*

[¶32.]     Nevertheless, Schaefer argues that the Board's economic concerns must be disregarded because of our decision in *McLaughlin School District 15-2 v. Kosters*, 441 N.W.2d 682 (S.D. 1989). In that case, petitioners appealed the denial of a petition for minor boundary change to the State Superintendent of Education (the predecessor position to the current secretary of the Department of Education). *Id.* at 683. The superintendent rejected the school board's argument "that the boundary change would create 'a domino effect' and that the school's financial situation would be damaged by the change." *Id.* at 686. We affirmed on appeal. *Id.* However, our decision reflected the conclusion that the denial of the petition was not arbitrary, capricious, or an abuse of discretion, not that a school district can never be concerned with "a domino effect." Notably, *Kosters* dealt with rural properties and, therefore, few "dominoes." When dealing with an urban setting where more properties are coterminous with a boundary between school districts, the potential for a domino effect increases.

[¶33.]     Similarly, Schaefer asserts that "[t]he economic effect, if any, of this minor boundary change is already taken into account by the statutory limitations of SDCL § 13-6-85[.]" We do not agree. SDCL 13-6-85 prohibits boundary changes affecting more than "two percent of the assessed valuation" of the current school district. The assessed value of the properties involved in the Petition is $472,160, which is two percent of $23,608,000. Consequently, under Schaefer's theory,

economic concerns could not factor into the Board's decision to deny the Petition as long as the TASD's total assessed value is greater than $23,608,000. Therefore, Schaefer essentially argues that the TASD's total assessed value would have to be reduced from its current value of $401,971,695 to $23,608,000 before the Board could consider economic factors in its decision to deny the Petition.

[¶34.]    Schaefer's theory would actually completely remove the consideration of economic factors from any school board's decision on a minor-boundary-change petition. As discussed in the preceding paragraph, Schaefer asserts that economic factors should not be considered when the property that is the subject of a petition has an assessed value of two percent or less of the assessed value of its current school district. However, when a petition affects more than two percent of the current district's value, the school board has no discretion to grant the petition. SDCL 13-6-85. Consequently, if we were to accept Schaefer's argument, then economic factors would be entirely removed from consideration in minor-boundary-change cases. As indicated above, we have explicitly held that a board's consideration of economic factors is proper. *Ust*, 502 N.W.2d at 584.

[¶35.]    Economic factors can play a particularly important role in an urban setting. In a rural area, the number of minor-boundary-change petitions is necessarily limited by the nature of rural properties—relatively large properties owned by relatively few individuals. When two school districts share a boundary inside an urban setting, however, properties tend to be smaller and more numerous. The proportionally higher number of property owners gives rise to a much greater potential for minor-boundary-change petitions. Additionally, every time a petition

is granted, the boundary between school districts shifts, likely creating new potential petitioners. In the context of the other factors considered by the Board, we do not think the Board's consideration of the potential economic consequences of the prospective transfer crossed over from legitimate to excessive in this case.

[¶36.]     g.     *Other factors*

[¶37.]     The circuit court found that "the primary motivation behind the Petitioners' petition for minor boundary change is their personal preference" and that the "driving force behind the petition" was the Petitioners' "fears regarding the potential revocation of their children's open enrollment[.]" The Petitioners' own witness, Sue Simons, the Assistant Superintendent for Human Resources and Legal Services for the SFSD, testified that revocation of open enrollment is rare and only occurs when a student fails to attend school on a regular basis. Simons testified that as long as the Petitioners ensure their children attend school regularly, there is no danger of having their open enrollment revoked. The Petitioners testified that they would make sure their children attended regularly. Thus, through the testimony of the Petitioners' witnesses alone, the main motivation behind the Petition is rendered nugatory.

[¶38.]     Schaefer also testified that the SFSD offered better educational opportunities in the form of advanced placement courses and others offering college credit. However, the Petitioners did not specifically identify any courses offered by the SFSD, nor did any SFSD witness testify regarding such courses offered in the SFSD. In contrast, the Board offered testimony from Collin Knudson, the principal of the Tea Area High School, who stated that the Tea Area High School offers

nearly 20 advanced-placement courses and numerous other courses that simultaneously provide high school and college credit.

[¶39.] Finally, we again note that the Petitioners did not respond to the Board's legitimate requests for additional information. None of the Petitioners supported the Petition by attending the March 25, 2014 hearing. In doing so, the Petitioners missed their first, best opportunity to advocate for their petition. The purpose of the appeal authorized by SDCL 13-46-1 and -6 is not to permit a party to "lay in the weeds" and refuse to participate in the petition process prior to an appeal before the circuit court. Petitioners who fail to support their own petition at the public hearing can hardly be surprised that a school board concludes the petition is not worth approving.

**Conclusion**

[¶40.] This appeal is properly before us even if Chris Schaefer is the only original petitioner to successfully enter an appeal. The factors that we have routinely examined in past minor-boundary-change cases do not support the assertion that the denial of the Petition was arbitrary, capricious, or an abuse of discretion. The community-alignment factor breaks down when applied to a community spanning more than one school district, and none of the other factors weigh in favor of granting the Petition. The Petitioners' conscious choice to move into the TASD discounts their claimed connection to the SFSD. Additionally, the Petitioners' primary concern in requesting the boundary change is essentially a nonissue because all of the children that would be affected by the boundary change have already been accepted into the SFSD through open enrollment. Thus, the

#27330

record presents substantial evidence such that the denial was not arbitrary, capricious, or an abuse of discretion. Consequently, we affirm.

[¶41.] ZINTER, SEVERSON, and KERN, Justices, and PALMER PERCY, Circuit Court Judge, concur.

[¶42.] PALMER PERCY, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.